**Howard WILSON, Plaintiff-Appellant,**

v.

**Mary TABOR, Defendant-Respondent.**

**No. WD 34463.**

Missouri Court of Appeals,
Western District.

Aug. 9, 1983.

Kevin K. Anderson, Harrisonville, for plaintiff-appellant.

Heilbron & Powell, Kansas City, for defendant-respondent.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

NUGENT, Judge.

Plaintiff appeals from a judgment for defendant in this personal injury action arising from his fall from defendant's automobile. Although plaintiff argues only that defendant's improper injection of contributory negligence in closing argument was error in this case submitted to the jury on the humanitarian doctrine of negligence, defendant argues that even if this were so, plaintiff was not prejudiced because he failed to make a submissible case. We reverse and remand for new trial.

### 1. *Submissibility*

We consider first the threshold question of whether plaintiff made a submissible case of humanitarian negligence. In doing so, we disregard defendant's evidence except insofar as it may aid plaintiff and we consider plaintiff's evidence as true, giving him the benefit of all favorable inferences which may be drawn from the evidence. *Kuehn v. Hahn,* 380 S.W.2d 445, 447 (Mo.1964). In this light, plaintiff's evidence shows the following.

In 1980, plaintiff Howard Wilson, then twenty-four years old, and defendant Mary Tabor, then twenty-two, dated for approximately one month. Although the relationship had been having its ups and downs, the couple agreed to go roller skating together on the evening of May 14. The defendant drove Mr. Wilson and another couple, David Purevich and Debbie Jackson (now Purevich), to Skateland Skating Rink in Grandview, Missouri. During the skating party,

Ms. Tabor told Mr. Wilson that she wanted to break off their relationship. He was upset and at the end of the evening's skating, at approximately 9:00 p.m., asked another friend for a ride home. Nevertheless, at the request of Mr. Purevich who informed him that Ms. Tabor wished to speak with him, the plaintiff entered her car, apparently agreeing that she would drive him to his house so that she could retrieve a ring and bracelet that she had given him. Mr. Wilson was sitting in the front passenger seat. Mr. Purevich and Ms. Jackson were in the back seat.

Mr. Wilson testified that as the defendant drove across the Skateland parking lot, his door was not completely shut. Ms. Tabor pulled out of the lot, turned right, and stopped almost immediately at a stop sign before entering the access road to 71 Highway. At the stop sign he told her, "Wait a minute, the car door isn't shut." In spite of this admonition, Ms. Tabor made a left turn and Mr. Wilson spilled out the right door onto the street. Ms. Tabor continued driving down the access road and did not return for Mr. Wilson. Plaintiff suffered a fractured skull and various bruises.

Although at trial, Ms. Tabor testified that Mr. Wilson said nothing about an open door and that he simply jumped from the car (allegedly in a state of suicidal depression over the termination of their relationship) after she started her left turn, plaintiff's counsel read excerpts from her deposition in which she stated that she saw the door open and asked him what he was doing. He said that he was just going to shut the door. In response to counsel's question, "And that was when you were starting up from the stop sign?", she answered, "Yes."

Because damages are not at issue here, we need not cover testimony in regard to plaintiff's hospitalization.

The humanitarian doctrine is said to be unique to Missouri and "proceeds upon the precept of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be

averted without injury to others." *Dey v. United Rys. Co. of St. Louis,* 140 Mo.App. 461, 120 S.W. 134 (1909).

■ The doctrine requires proof of the following elements: (1) plaintiff was in a position of immediate danger; (2) defendant had actual or constructive notice; (3) defendant had the means to have averted the impending injury without injury to himself or others; (4) he failed to exercise due care to avert the injury; and (5) plaintiff was injured as a result. *Eddings v. Keller,* 400 S.W.2d 164 (Mo.1966).

On the question of submissibility, the elements in dispute are the first and third—whether plaintiff was in a position of immediate danger and if he was, whether defendant had sufficient opportunity to take corrective action after plaintiff came into that position. As to the other elements, sufficient evidence was presented through both plaintiff's testimony and defendant's deposition that Ms. Tabor knew of the open door before making the left turn which threw Mr. Wilson out onto the street. In addition, defendant does not question that she had the means, had she had time, instantly to straighten the car wheels or decelerate and avoid the dangers caused by making a left turn while the right door was open or unlatched. Nor does defendant dispute that she failed to act or that plaintiff was injured as a result of his fall.

■ The humanitarian doctrine's "position of immediate danger"[1] requires that peril must be "imminent, certain, immediate and impending." *Granger v. ITT Continental Baking Co.,* 536 S.W.2d 894, 897 (Mo. App.1976). The position is defined as

> that position of danger to the plaintiff, whether or not the plaintiff was negligent in getting there, in which by reason of the then existing circumstances, if unchanged, injury to the plaintiff is reasonably certain and not a mere possibility. The peril must actually be imminent and may not be merely remote, uncertain or contingent.

*Epple v. Western Auto Supply Co.,* 548 S.W.2d 535, 540 (Mo.1977) (en banc).

Only when that position of peril arises does the humanitarian doctrine, out of its "extreme regard for human life," permit the usual defenses of contributory or antecedent negligence to be blotted out. *Eddings v. Keller, supra; Banks v. Morris & Co.,* 257 S.W. 482, 484 (Mo.1924) (en banc).

■ The doctrine does not apply where one is merely in a perilous position where . "something would have to happen other than that which was then happening before injury would befall plaintiff." *McClanahan v. St. Louis Public Service Co.,* 251 S.W.2d 704 (Mo.1952) (en banc). In other words, defendant's duty to take effective action arises only when plaintiff *reaches* a position of immediate danger, rather than merely *approaches* such a position. *Finch v. Kegevic,* 486 S.W.2d 515, 519 (Mo.App.1972).

Here, the parties agree that while defendant was either driving forward or turning right, plaintiff was not in immediate danger. At that point, only the possibility of injury existed. Something more would have to happen before injury could result, specifically, defendant would have to turn left. That, of course, happened only after defendant began moving forward from the stop sign. Only when she began to turn the wheels to the left and accelerate was defendant endangered by the effects of centrifugal force.

The issue, as defendant defines it, is whether plaintiff was in immediate danger as the turn began with the door closed or whether immediate danger began only when centrifugal force caused the door to fly open. Defendant argues the latter and relies on *McClanahan v. St. Louis Public Service Co., supra,* for the rule that when immediate danger does not exist until a point at which the plaintiff is almost simultaneously injured, a defendant has no opportunity to avoid the injury and the humanitarian doctrine does not apply. There, a boy was clinging to the outside of a

---

1. The traditional term "imminent peril" has been replaced in MAI 17.14 with "imminent

danger." See Notes on Use 5. The terms are now considered synonymous.

streetcar and was injured when the car accelerated and jerked. The court held that clinging to the side was merely perilous and that no "immediate danger" existed until the acceleration. Because that occurred simultaneously with the injury, the driver had no opportunity to act.

We are not convinced by defendant's argument primarily because the choices she gives us as to when immediate danger began are not consistent with the evidence. She presents the first alternative (said to be plaintiff's position), that immediate danger began as the turn was started, as representing a point at which the door was not yet open. If that were so, immediate danger obviously would not exist. Here, however, defendant's deposition shows that as she was starting from the stop sign she saw that the door was open. Plaintiff's testimony was the same. Defense counsel in his brief concedes that the defendant's duty under the humanitarian doctrine, arose when the door came open. We must recognize that the jury heard evidence that the door was open as the turn began, that defendant was aware of that fact, that plaintiff specifically requested that she wait for that very reason, and that she completed the turn in spite of her knowledge and his request. We find that the evidence was sufficient to submit to the jury the question whether plaintiff was in a position of immediate danger at a time when defendant could have avoided injury simply by not continuing the turn or by ceasing acceleration. As a general rule, the place and time where one comes into a position of immediate danger is one for the jury. *Corbett v. Snitzer,* 558 S.W.2d 392 (Mo.App.1977). We cannot say that these facts represent a situation, as in *McClanahan,* where the question can be settled as a matter of law.

Moreover, in its recent opinion in *Reichert v. Lynch,* 651 S.W.2d 141 at App. 143–144 (Mo.1983) (en banc), the Supreme Court has held that a plaintiff in immediate danger from the time a car started moving (there, by holding onto the driver's hair while one foot was in the car and the other

was dangling), is in a situation distinguishable from that in *McClanahan* as being apt to fall at any time. We find the facts here, where the jury heard evidence that plaintiff's immediate danger began from the time the car moved forward from the stop sign, more comparable to *Reichert* than *McClanahan.*

We hold, therefore, that plaintiff made a submissible case under the humanitarian doctrine of negligence.

## 2. Injection of Contributory Negligence

Plaintiff argues that his submissible case was prejudiced by defendant's improper injection of contributory negligence in closing argument. During defense counsel's argument, the following colloquy occurred:

Mr. Powell: He's not in danger, even if the door's open, if he leans the other way, is he? There's no danger. The only danger, if the door's open, is if he's leaning against it. So, is he in a position where he can't save himself without acting? And that's what that instruction tells you.

Mr. Milholland: Objection. That's arguing contributory negligence; outside the issues, Your Honor.

The Court: Objection will be sustained.

Mr. Milholland: Ask the jury be instructed to disregard that.

The Court: The jury will be instructed to disregard it.

Mr. Powell: I'm trying to discuss the position of immediate danger, Your Honor, not contributory negligence.

The Court: All right.

Mr. Powell: . . . If that door was unlatched, and you have all seen this picture, when he got in the car over there, look at the time he had to latch it while they were driving slowly through here—

Mr. Milholland: Objected to as arguing antecedent actions and negligence which have nothing to do with a humanitarian case.

The Court: Overruled.

Mr. Powell: He had plenty of time, so he wasn't in any danger. All he had to do was latch that any time he wanted. . . .

■ The law as to the relevance of evidence of plaintiff's contributory negligence in a humanitarian doctrine case is very clear. As stated in *Fisher v. Williams*, 327 S.W.2d 256, 260 (Mo.1959):

The one thing that probably all lawyers confidently know about the humanitarian doctrine is that liability attaches notwithstanding the plaintiff's contributory negligence, and that it is improper for a defendant to directly inject the issue of antecedent negligence into a case submitted solely on the hypothesis of the doctrine, either in his instructions or his argument.

*See also Yarrington v. Lininger,* 327 S.W.2d 104 (Mo.1959), stating that "[w]hatever transpires from the standpoint of either plaintiff or defendant prior to the time that plaintiff enters into a position of imminent peril does not affect the rights of the parties thereafter."

When the case is submitted on the humanitarian doctrine alone, exceptions to this rule that plaintiff's negligence is irrelevant are limited. One such exception was made, however, in *Eddings v. Keller, supra,* where the court permitted defendant to argue that not only could he not see plaintiff's car before he collided with it, neither could plaintiff's decedent see, evidenced by the fact that he had just collided with another car in that same spot. This reference to plaintiff's decedent's accident was permitted because it was directed to the primary issue of visibility and because plaintiff had already introduced evidence of the antecedent negligence.

Defense counsel attempts to come within that exception by arguing that his comments about plaintiff's ample opportunity to latch the door were directed to the issue of whether or not the door was in fact open before the turn was made, and not to plaintiff's antecedent negligence. We are perfectly willing to credit counsel's explanation as to his intent in so arguing, but we are most skeptical that his argument would

have been so understood by the jury. The court in *Penn v. Hartman,* 525 S.W.2d 773, 777 (Mo.App.1975), referred in less charitable terms to defendant's assertion that plaintiff's failure to look was mentioned on the issue of plaintiff's credibility rather than plaintiff's negligence. Judge Stewart wrote that "[w]e feel this [assertion] can be viewed in much the same light as Anthony's assurance that he came to 'bury Caesar not to praise him'." Here, our doubt is buttressed by the fact that defense counsel never attempted to connect his comments as to plaintiff's ample opportunity to latch the door with the fact question of whether the door was open. Instead, immediately after the objection was overruled, he argued that "[h]e had plenty of time, so he wasn't in any danger. All he had to do was latch that any time he wanted." That comment simply cannot be said to be linked with the fact question whether the door was open or even defendant's knowledge of the status of the door. The jury could only see it as a comment on plaintiff's opportunity and failure to remove himself from danger, a completely inappropriate and impermissible comment in a humanitarian negligence case.

■ In the context, then, of the unsuccessful attempt just seconds before to comment on plaintiff's position to "save himself" by leaning the other way (objection to which was sustained), and the comment seconds later on "all plaintiff had to do" to relieve the danger, we find defense counsel's reference to the time plaintiff had to latch the door to be an impermissible injection of contributory negligence. The law is absolutely clear that evidence of plaintiff's behavior before entering the zone of immediate danger is irrelevant and will not be permitted absent very limited exceptions, as when plaintiff has already introduced evidence of the antecedent negligence or where the evidence goes to a legitimate point at issue in the case. To preserve the integrity of the humanitarian doctrine and the salutary policies it serves, the courts must examine with a critical eye any attempt to invoke such an exception. Asser-

tions that such exceptions exist in a particular case will be carefully evaluated in light of the clear policy of the law. Defendant's assertion here of the relevance of her counsel's comments to a legitimate issue cannot withstand such examination, particularly considering how the jury must have understood it. Her argument to us suggests instead only an after-the-fact effort to rationalize an improper and prejudicial comment.

We hold, therefore, that defense counsel, in closing argument, improperly injected the issue of antecedent negligence in this humanitarian negligence case, prejudicing plaintiff as a matter of law.

For the foregoing reasons, we reverse the trial court's judgment and remand for new trial.

All concur.