**OFFICE OF PUBLIC UTILITY COUNSEL, Appellant,**

v.

**PUBLIC UTILITY COMMISSION, Appellee.**

No. 3–89–005–CV.

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Rehearing Overruled Nov. 28, 1990.

**2.** Appellant's offense was committed before the effective date of Article 44.29(b).

C. Kingsbery Ottmers, Public Counsel and John L. Laakso, Asst. Public Counsel, Austin, for appellant.

Jim Mattox, Atty. Gen. and Susan D. Bergen, Asst. Atty. Gen., Austin, for Public Utility Com'n of Texas.

R. Michael Anderson, Redford, Wray & Woolsey, Austin, for West Texas Utilities Co.

Before SHANNON, C.J., GAMMAGE and JONES, JJ.

PER CURIAM.

The Office of Public Utility Counsel (OPUC) appeals the district court's judgment that affirmed the Public Utility Commission's order in Docket 7289. In Docket 7289, the Commission granted West Texas Utilities' (WTU) request for deferred accounting treatment for certain costs related to a new generating plant, Oklaunion Power Station Unit No. 1 (Oklaunion). OPUC brings three points of error: (1) the Commission's decision that WTU's petition was not a ratemaking proceeding was affected by error of law and resulted in a decision that violates §§ 39(a) and 43(a) of the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c (Supp. 1990), and § 13 of the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp. 1990); (2) the Commission's decision to allow deferred accounting treatment to pre-

vent the detrimental effect of regulatory lag on investors was affected by error of law because it did not consider the effect of regulatory lag on ratepayers as well; and, (3) the Commission erred in adopting a standard for allowing deferred accounting that is, in essence, no standard at all. We will overrule these points of error and affirm the trial court's judgment.

## BACKGROUND

In December 1986, WTU placed the Oklaunion power plant into commercial service. Under standard accounting procedures, at that time WTU would have stopped accruing Allowance for Funds Used During Construction (AFUDC) and would have begun charging operation and maintenance, depreciation, and taxes as expenses against income. WTU contends that in the interval between the time the plant was placed in service and AFUDC ceased, and the time the plant would be included in its rate base, WTU would have incurred operating expenses and carrying costs on its invested funds that it would never recover. The deferred accounting treatment at issue in this docket allowed WTU to capitalize these operating expenses and carry them as a separate asset on its balance sheet. The usual reason for allowing such treatment is that a large addition to the plant-in-service, combined with a delay between placing the plant in service and including it in rate base, has a detrimental impact on the utility's financial condition. The reasonableness of the amount of the costs, and therefore the amount that WTU would recover, would be determined in a separate ratemaking proceeding in which the balance-sheet asset consisting of the deferred costs would be reviewed using the same criteria as any other asset.

## RATEMAKING PROCEEDING

■ The dispute centers around whether the proceeding by which WTU was allowed to give deferred accounting treatment to certain items was properly handled as a proceeding limited to the "accounting" issue or whether it was, as OPUC contends in point of error one, actually a ratemaking proceeding that should have followed PURA § 43(a). The essence of OPUC's position is that the Commission's order assumes as true a proposition that WTU should have to prove: that an actual cost has been incurred in the first place. OPUC argues that the Commission's decision to determine whether the amount of the deferred costs is reasonable and necessary at the rate hearing means that the issue whether the costs exist at all will never be considered because the existence of the costs has been assumed.

OPUC complains that the Commission has foreclosed consideration of the issue whether WTU's shareholders made an investment because of the way in which it separated the dockets. In docket 7289, the accounting issue, paragraph 3 of the order said that the costs will be included in investment capital to the extent that they were reasonable and necessary. In docket 7510, the commission said that docket 7289 had already determined that these costs should be recovered as invested capital. Therefore, OPUC contends that this issue will never be dealt with. OPUC ignores, however, the fact that both of these orders also said that these items would be recovered to the extent that they were reasonable and necessary.

■ *Public Utility Commission v. Houston Lighting & Power*, 748 S.W.2d 439 (Tex.1987), dealt with the allocation of tax benefits between HL & P shareholders and ratepayers, a determination made in the context of a ratemaking hearing. The court first discussed the general factors to be considered in setting rates: (1) reasonable and prudent operating expenses; (2) the rate base; and (3) the rate of return. *Id.* at 441. The court then stated that when a utility's prudent and reasonable operating expenses increase, its rates increase. "To insure that its rate is just and reasonable, a utility must prove that all operating expenses have been actually incurred." *Id.* Therefore, whether an expense has been actually incurred by the utility is an integral part of determining whether it was a reasonable and necessary, and therefore recoverable, expense. An

order that states that an item or items for which deferred accounting treatment has been allowed is invested capital to the extent it is reasonable and necessary carries with it the premise that the item must first be established to exist as a "cost." In other words, the asset consisting of the account for deferred items is evaluated in the same way as any other asset.

OPUC's argument that this proceeding must be a "rate proceeding" under PURA § 43(a) because the allowance of deferred accounting has at least an indirect effect on rates proves too much. A similar analysis of the idea of multiple factors having an indirect effect on rates was made in the context of PURA § 24, concerning the reimbursement of regulatory expenses in ratemaking proceedings. *City of El Paso v. Public Utility Commission of Texas*, 609 S.W.2d 574, 579 (Tex.App. 1980, writ ref'd n.r.e.). The Commission had found that only expenses incurred by the City in cases involving applications for rate changes under § 43(a) could be reimbursed. The district court reversed the Commission, holding: "Utility rates seem to be dictated, in substantial part at least, by an accumulation of prior decisions often made in proceedings not exclusively devoted to 'rates' as such. Matters are frequently decided in these other proceedings that 'make' the rates that are 'set' later." *Id.* The appeals court reversed, finding that the statute's language was unambiguous, and that although other proceedings may affect rates, the expenses would be reimbursed only in a proceeding held to set rates. *Id.* We overrule point of error one.

## REGULATORY LAG

In point of error two, OPUC complains that the Commission's decision to allow deferred accounting to prevent the detrimental effects of regulatory lag on investors was affected by error of law because it did not consider the effect of regulatory lag on ratepayers. This point presents nothing for our review. OPUC fails to point to any particular finding it contends is erroneous. *See City of San Antonio v. Dept. of Health*, 738 S.W.2d 52,

55 (Tex.App.1987, writ denied); *Helle v. Hightower*, 735 S.W.2d 650, 654 (Tex.App. 1987, writ denied). A litigant has the burden to show that the record supports its contentions and point out those places in the record. *Id.; Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407 (Tex.App.1987, writ ref'd n.r.e.). The only reference to the record is to testimony on the general proposition that investors in utilities account for the reality of regulatory lag in the price they pay for stock. OPUC does not even cite us to a specific portion of the order in which a finding or conclusion of the Commission shows that it considered regulatory lag as such in formulating the order allowing the deferred accounting procedure. We overrule point of error two.

## STANDARD USED

In point of error three, OPUC contends that the standard adopted by the Commission for its review of a request for deferred accounting treatment is too lax and its scope too narrow, and is, in essence, no standard at all. The three factors comprising the standard, as outlined in the Commission's conclusion of law 8, are: (1) the company's current financial integrity; (2) the company's financial condition; and, (3) accordance with GAAP.

The Commission has been authorized to prescribe forms of accounts and fix adequate methods of accounting. PURA § 27. The statute does not set out any mandatory factors to consider, however, unlike PURA § 41(a) that governs the allowance of Construction Work in Progress (CWIP). When statutes are expressed in general terms, as is § 27 of PURA, the agency has, by necessary implication, the power to make final detailed choices by administrative policies. *Amtel Communications, Inc. v. Public Utility Commission*, 687 S.W.2d 95, 108 (Tex.App.1985, no writ). Agencies may make and apply policies in the context of determining contested cases so long as the agencies act within constitutional and statutory limits. *Id.* OPUC has failed to point out any specific

constitutional or statutory grounds for reversing the agency's policy determination.

OPUC points to three previous Commission dockets, two granting, one denying, deferred accounting treatment: *Gulf States Utilities Co.*, Docket No. 6525 (June 25, 1986); *El Paso Electric Co.*, Docket No. 6350 (Jan. 31, 1986); and *Houston Lighting & Power Co.* Docket No. 6765 (Nov. 14, 1986). These dockets tend to support the proposition that the Commission has made a rational policy determination and is applying it fairly. The decision to grant deferred accounting treatment in this case is similar to the previous dockets allowing deferred accounting in that in each instance the amount of the investment in the new plant was extremely large in comparison to existing plant included in the rate base. Thus, the policy that deferred accounting treatment is proper only when a plant addition is so large relative to the size of the utility that it would require a utility to request a major rate change to include it in its rate base, and that failure to do so would cause measurable harm to the utility's financial condition, appears to have been consistently applied. Therefore, we cannot find the decision of the Commission to be arbitrary, capricious, or an abuse of discretion. We overrule point of error three.

We previously severed this cause, the appeal from PUC docket 7289, from the appeals from PUC docket 7510 (3–88–272, 274, 276, 279, 280, 281) with which this cause was argued. We have previously, in our opinion in those causes, remanded those causes to the trial court. We will affirm the judgment of the trial court in this cause, 3–89–005–CV.

Affirmed.