**STATE of Texas and Office of Public Utility Counsel, Appellants,**

**v.**

**PUBLIC UTILITY COMMISSION OF TEXAS and Central Power and Light Company, Appellees.**

**STATE of Texas and Office of Public Utility Counsel, Appellants,**

**v.**

**PUBLIC UTILITY COMMISSION OF TEXAS and Houston Lighting and Power Company, Appellees.**

Nos. 3–90–259–CV, 3–90–260–CV.

Court of Appeals of Texas, Austin.

Sept. 16, 1992.

Rehearing Overruled Nov. 18, 1992.

Dan Morales, Atty. Gen., W. Scott McCollough, Asst. Atty. Gen., Austin, for State of Tex.

John L. Laakso, Stephen Fogel, Asst. Public Counsels, Austin, for Office of Public Utility Counsel.

Dan Morales, Atty. Gen., Karen Pettigrew, Norma K. Scogin, Asst. Attys. Gen., Austin, for Public Utility Com'n of Texas.

Davison W. Grant, Redford, Wray & Woolsey, Austin, for Central Power and Light Co.

Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Houston Lighting and Power Co.

Before POWERS, ABOUSSIE and JONES, JJ.

JONES, Justice.

Central Power and Light Company ("CP & L") and Houston Lighting and Power Company ("HL & P") applied to the Public Utility Commission (the "Commission") for deferred-accounting treatment of certain costs associated with a new nuclear power plant in Matagorda County, Texas, known as the South Texas Project. The Commission granted the applications, and the district court upheld the Commission's orders granting the requests. The State of Texas, on behalf of certain State agencies, and the Office of Public Utility Counsel ("OPC") appeal that judgment to this Court. We will affirm in part and reverse in part.

## BACKGROUND

In 1972, HL & P, CP & L, the City of Austin, and the City of San Antonio began construction of a two-unit nuclear generating station in Matagorda County, Texas, known as the South Texas Project. Unit One of the South Texas Project ("STP–1") was completed and began commercial operation on August 25, 1988. Under standard accounting procedures, CP & L and HL & P would have stopped accruing Allowance for Funds Used During Construction ("AFUDC") at that time and would have begun charging operations and maintenance, depreciation, insurance, and taxes as expenses against income. HL & P and CP & L contend that in the interval between the time STP–1 was placed in service and the time the plant would be included in rate base (i.e., the "regulatory-lag" period), HL & P and CP & L would have incurred operating costs and carrying costs on their invested funds that they would never recover. Therefore, both CP & L and HL & P applied to the Commission for deferred-accounting treatment ("DAT") of such costs during the regulatory-lag period.

In Docket No. 8230 the Commission granted HL & P's request for DAT for a period from August 25, 1988, to no later than November 23, 1989. Later, in Docket No. 9010, the Commission extended HL & P's deferral period beyond November 23, 1989, until such time as the cost of STP–1 was reflected in rates approved by the Commission. In Docket No. 7560 the Commission granted CP & L's request for DAT for a period from August 25, 1988, to no later than February 15, 1990. By granting DAT during such time periods, the Commission allowed CP & L and HL & P to

capitalize their costs associated with STP–1 during those periods and carry them as separate assets on their balance sheets. The reasonableness of the amount of the costs was to be determined by the Commission in a separate ratemaking proceeding in which the balance-sheet asset consisting of the deferred costs would be reviewed using the same criteria as any other asset.[1]

The State of Texas and OPC sought judicial review of the Commission's orders granting DAT to CP & L and HL & P. In the district court, Cause No. 467,589 involved the review of the Commission's orders in Docket Nos. 8230 and 9010 (i.e., the orders granting DAT to HL & P). Cause No. 467,587 involved the review of the Commission's order in Docket No. 7560 (i.e., the order granting DAT to CP & L). The district court upheld all three orders, and the State and OPC appealed to this Court. On appeal, Cause No. 467,587 has been assigned No. 3–90–259–CV, and Cause No. 467,589 has been assigned No. 3–90–260–CV. The causes were consolidated in this Court for purposes of oral argument, and the bases for our decisions in both will be set forth in this opinion.

## JURISDICTION

Through a combination of five points of error, the State asserts that neither this Court nor the court below has jurisdiction to review the Commission's orders in Docket Nos. 8230, 9010, and 7560. First, the State argues that these orders are not final orders. The State further argues that even if the order in No. 8230 is final, the trial court erred in failing to rule that No. 9010 was void for want of jurisdiction because the two dockets involved similar issues of fact and law. In this regard, the State asserts that the appellees waived any argument that the two dockets involved different issues because in the process of seeking consolidation, the appellees claimed that the two dockets involved the same issues. Finally, the State argues that it is hindered in presenting this waiver argu-

ment on appeal because the trial court failed to enter conclusions of law.

### 1. Finality of the Orders

Only "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review...." *See* Administrative Procedure and Texas Register Act ("APTRA"), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 16, 19(a) (West Supp.1992); Public Utility Regulatory Act ("PURA"), Tex.Rev. Civ.Stat.Ann. art. 1446c, § 4 (West Supp. 1992). Therefore, for a party to obtain judicial review of an administrative order, the order must be final and appealable. *PACE v. Texas Air Control Bd.*, 725 S.W.2d 810, 811 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

The State argues that the orders in Nos. 8230 and 7560 were not final because the Commission reserved the power to decide whether HL & P and CP & L should be granted DAT beyond November 23, 1989, and February 15, 1990, respectively. We disagree.

The relevant portion of the order in No. 8230 provided the following:

1. Houston Lighting and Power Company (HL & P or the Company) shall continue to accrue AFUDC on the Company's investment in the South Texas Nuclear Project–1 (STP–1) and to defer and capitalize the depreciation, operations and maintenance, insurance, and tax expenses associated with STP–1 from August 25, 1988, until the earlier of either the date rates which reflect those costs are effective or November 23, 1989. If by November 23, 1989, rates are not in effect that reflect the prudently incurred costs of the plant, HL & P may file a petition with the Commission alleging what extraordinary circumstances, if any, exist which would warrant an extension of the deferral period beyond November 23, 1989.

The relevant portion of the order in No. 7560 was essentially the same as that quot-

1. For a more complete discussion of "regulatory lag" and "deferred-accounting treatment," see *City of El Paso v. PUC,* 839 S.W.2d 895 (Tex. App.—Austin, 1992, n.w.h.).

ed above from No. 8230. Therefore, the remaining discussion on finality will focus only on No. 8230; however, the conclusions we reach apply to both.

■■■ A final administrative order is one that leaves nothing open for future disposition. *PACE*, 725 S.W.2d at 811. So long as matters remain open, unfinished, or inconclusive, there is no final decision. *Id.* However, final orders are not limited to the last order in a proceeding. *Texas Gen. Indem. Co. v. Strait*, 673 S.W.2d 334, 336 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). On the issue of finality of administrative orders, the Texas Supreme Court recently wrote:

> Although there is no single rule dispositive of all questions of finality, courts should consider the statutory and constitutional context in which the agency operates, and should treat as final a decision "which is definitive, promulgated in a formal manner and one with which the agency expects compliance." 5 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* 48–10 (1988). Administrative orders are generally final and appealable if "they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process."

*Texas–New Mexico Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex.1991).

■■ Certainly the order in No. 8230 was formally promulgated. Further, it was both definitive and conclusive. The order left nothing open to dispute concerning HL & P's right to DAT for the stated period of time. Also, despite the State's argument to the contrary, this right was in no way affected by the provision in the order allowing the Commission to determine later if HL & P could defer expenses for a period beyond November 23, 1989. The order in No. 8230 did not authorize the Commission to reconsider its decision to grant HL & P's request for DAT for the period up to November 23, 1989; rather, it allowed the Commission to consider facts and circumstances that might exist *after* that date. Therefore, we conclude that the

order in No. 8230 was both definitive and conclusive as to HL & P's right to DAT for the period from August 25, 1988, to no later than November 23, 1989. *Cf. PACE*, 725 S.W.2d at 811.

The State also points out that in No. 8230, the Commission reserved decision-making on whether HL & P should be granted DAT beyond November 23, 1989, even though HL & P requested such treatment until rates reflecting the deferred expenses were in effect. The State asserts that the denial of DAT for the full period requested meant that HL & P failed to carry its burden of proof before the Commission. The State argues that the Commission had no authority to allow HL & P to relitigate an issue it had previously lost.

■■ In support of its argument, the State cites *Coalition of Cities for Affordable Utility Rates v. PUC*, 798 S.W.2d 560 (Tex.1990). In *Coalition of Cities*, the supreme court held "that the doctrines of *res judicata* and collateral estoppel bar a utility from relitigating before the PUC the prudence of its past investment for inclusion in that utility's rate base." *Id.* at 565. In so holding, the court reasoned:

> At issue here is not increased operating expenses or the appropriate rate of return—factors that can change over time. Rather, every fact involved is historical; the amount and wisdom of these construction expenditures will remain constant no matter how many times the PUC permits relitigation addressing them. . . . Were this not true, imposition of *res judicata* principles would be inappropriate.

*Id.* at 563. Unlike *Coalition of Cities*, however, in the present case not every fact was historical. On its face, the order in No. 8230 showed that the Commission knew it was dealing with facts that could change over time. When the order was issued, the circumstances were such that the Commission granted DAT to no later than November 23, 1989. However, realizing that the circumstances could change, the Commission reserved the option to order DAT for a period beyond November 23, 1989, if the circumstances warranted. Be-

cause not every relevant fact in the case at bar was historical, and because the Commission was dealing with factors that could change over time, we determine that the application of res judicata would be inappropriate in this case.

Finally, the State argues that the orders in Nos. 8230, 9010, and 7560 were not final because the Commission reserved, until a subsequent docket, any decision on the amount of the deferred expenses that HL & P and CP & L could include in rate base. The order in No. 9010 provided, in relevant part, that "[t]he deferred expenses themselves are not to be recovered until the next rate case after Docket No. 8425." The order in No. 8230 provided:

4. Capitalized costs shall be subject to review by the Commission in HL & P's subsequent ratemaking dockets. Those costs will be included in invested capital to the extent and only to the extent that the Commission determines that they are prudent, reasonable, and necessary expenses and that they are related to property that is used and useful in providing service.

Again, the relevant portion of the order in No. 7560 provided essentially the same as that quoted above from No. 8230.[2]

■ In support of its argument, the State cites several cases for the proposition that an administrative order is not final if rights conferred therein are made contingent on the occurrence of some future event. *See Mahon v. Vandygriff*, 578 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). First, we note that the Texas Supreme Court has disapproved of this language as being overbroad. *See Texas–New Mexico Power Co.*, 806 S.W.2d at 231. Indeed, the supreme court has recognized that the presence of a condition in an order does not automatically destroy its finality. *Id.* Further, we fail to see

how the rights conferred in the orders in question were contingent on any future event. The orders gave HL & P and CP & L the right to defer expenses for a stated period of time. Whether these expenses were prudent, reasonable, and necessary, and therefore included in the invested capital on which rates were based, is a different issue. The orders gave the utilities the right to DAT for a stated period of time, and this right of deferral was not contingent on any future event.

For the reasons discussed above, we conclude that the orders in Nos. 8230, 9010, and 7560 were final orders and are, therefore, ripe for judicial review.[3] We now address the State's similar-issues argument.

**2. Similar Issues of Fact and Law**

The State next contends that even if the order in No. 8230 is a final order, the trial court erred in denying the State's motion to dismiss for want of jurisdiction in No. 9010 because the two dockets involved similar issues of fact and law. The State argues that despite HL & P's request in No. 8230 for DAT for the full period of time from dedication to rate recognition, the Commission granted DAT for only part of the period requested. The State further argues that the Commission, in No. 9010, effectively set aside part of the order in No. 8230 and granted relief it had previously denied. The State asserts that the Commission lacked jurisdiction to do this because the State had already sought judicial review of the No. 8230 decision.

■ Under Texas law, when a suit is brought to test the validity of an agency order, the agency loses jurisdiction over the subject matter of such order while the suit is pending. *South Tex. Indus. Serv. Inc. v. Texas Dep't of Water Resources*, 573

---

2. At oral argument, counsel for CP & L candidly admitted that the order in No. 7560, which provided that the deferred costs in that case were to be included "in cost of service, and a return allowed on the unamortized balance," effectively treated such costs as invested capital.

3. In so holding, we do not address whether the wording of the orders precludes the Commis-

sion from considering related recoverability issues in later rate cases. *Cf. Business & Prof. People for the Pub. Interest v. Illinois Commerce Comm'n*, 146 Ill.2d 175, 166 Ill.Dec. 10, 36–41, 585 N.E.2d 1032, 1058–63 (1991). We hold only that the orders were sufficiently definite, as to the issue decided, to constitute final and appealable orders.

S.W.2d 302, 304 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.). However, an agency often has the right to reopen a matter and issue a different order on a showing of changed circumstances. *Id.* The agency loses jurisdiction only over the subject matter of the original order. *Id.* In the case at bar, the order in No. 8230 dealt only with the right to DAT for the period ending November 23, 1989. The order expressly reserved the right to make a decision concerning changed circumstances in a later docket. By appealing the order in No. 8230, the State only precluded the Commission from reconsidering the subject matter of the original order—the right to DAT for the period up to November 23, 1989. In No. 9010, the Commission did not reconsider the subject matter of No. 8230. Instead, the Commission dealt with the circumstances as they existed *after* November 23, 1989. Therefore, we conclude that the Commission did not lack jurisdiction to consider No. 9010.

■■■■■ The State also argues that by agreeing to the consolidation of No. 8230 and No. 9010 in the court below, HL & P and the Commission are somehow estopped from arguing that these dockets did not involve similar issues of law and fact, and, therefore, are further estopped from arguing that the Commission had jurisdiction over No. 9010. We disagree. Rule 174 of the Texas Rules of Civil Procedure provides that a court may consolidate two or more actions if the actions involve a common question of law or fact. Clearly, Nos. 8230 and 9010 involved a common question of law—whether the Commission had the authority to allow DAT after a project has been dedicated to public use. However, that common question is not relevant to whether the Commission had jurisdiction to consider No. 9010. Although Nos. 8230 and 9010 involved a common question of law, they did not involve the same subject matter—each dealt with the possibility of DAT for two different time periods. We conclude, therefore, that the fact that the Commission and HL & P agreed to the consolidation of Nos. 8230 and 9010 at the trial court level did not preclude the Com-

mission from arguing it had jurisdiction over the subject matter of No. 9010.

■■■■■ Finally, the State argues that the trial court erred by failing to file conclusions of law when they were properly requested. Based on our conclusions reached above, this argument is without merit. Further, even if requested, the trial court need not file findings of fact and conclusions of law following rendition of judgment in a suit for judicial review under APTRA. *See Galveston Bay Conservation and Preservation Ass'n v. Texas Air Control Bd.*, 586 S.W.2d 634, 639 (Tex.Civ. App.—Austin 1979, writ ref'd n.r.e.). Finally, even if the trial court erred by failing to file conclusions of law, such error did not prevent the State from making a proper presentation of the cause to this Court.

For the foregoing reasons, we conclude that the orders in Nos. 8230, 9010, and 7560 were all final orders. We also conclude that the Commission did not lack jurisdiction over No. 9010. Therefore, we overrule the State's first, second, third, and fourth points of error asserted in No. 3–90–260–CV; we also overrule the State's first point of error in 3–90–259–CV.

## RATEMAKING PROCEEDING

■■■ The State and OPC also argue that Docket Nos. 8230, 9010, and 7560 were actually ratemaking proceedings, and, therefore, the Commission erred in failing to follow the ratemaking procedures set forth in PURA § 43. We disagree. This Court has held that a proceeding in which deferred accounting is permitted, but which does not purport to fix new rates, is not a rate case. *See Office of Pub. Util. Counsel v. PUC,* 808 S.W.2d 497, 499–500 (Tex. App.—Austin 1990, writ requested). Therefore, in No. 3–90–259–CV we overrule the State's third point of error and OPC's first point of error. In No. 3–90–260–CV we overrule the State's sixth point of error and OPC's first point of error.

## DEFERRED–ACCOUNTING TREATMENT

■■■ As discussed above, the Commission granted CP & L and HL & P's request

for deferred-accounting treatment of carrying costs, depreciation, operation and maintenance, insurance, and tax costs beginning August 25, 1988 (the date STP–1 went into commercial operation). The State argues that such action violates PURA §§ 39 and 41(a), and both the State and OPC argue that such action constitutes illegal retroactive ratemaking.

This Court recently addressed these same arguments in *City of El Paso v. PUC*, 839 S.W.2d 895 (Tex.App.—Austin, n.w.h.). Based on our reasoning in *City of El Paso*, we hold that to the extent the Commission granted deferred-accounting treatment to CP & L and HL & P for carrying costs associated with STP–1 during the regulatory-lag period, it violated PURA § 41(a). As for the remaining costs associated with STP–1 during the regulatory-lag period (i.e., operating and maintenance, tax, etc.), we conclude, for the reasons set forth in *City of El Paso*, that deferred-accounting treatment of such costs neither violates PURA nor constitutes illegal retroactive ratemaking.

Therefore, in No. 3–90–259–CV we sustain the State's fourth point of error to the extent it pertains to carrying costs and overrule the point to the extent it pertains to the remaining deferred costs. Also, we overrule the State's second point of error and OPC's second point of error regarding retroactive ratemaking to the extent they pertain to costs other than carrying costs; we do not address whether deferring carrying costs amounts to retroactive ratemaking. In No. 3–90–260–CV we sustain the State's seventh point of error to the extent it pertains to carrying costs and overrule the point to the extent it pertains to the remaining deferred costs. Also, we overrule the State's fifth point of error and OPC's second point of error regarding retroactive ratemaking to the extent it pertains to costs other than carrying costs; again, we do not address whether the deferral of carrying costs amounts to retroactive ratemaking.

Finally, in three rather confusing points of error, the State argues that various aspects of the Commission's orders in Nos. 8230, 9010, and 7560 are not supported by substantial evidence. Because of our holding above that the Commission violated PURA section 41(a) in allowing deferred accounting treatment of carrying costs, we do not address whether such action was supported by substantial evidence. To the extent the State argues that other aspects of the Commission's orders are not supported by substantial evidence, we conclude that the record contains ample evidence to support the Commission's orders. Therefore, we do not address the State's fifth point of error in No. 3–90–259–CV and its eighth and ninth points of error in 3–90–260–CV to the extent they attack the deferred-accounting treatment of carrying costs; we overrule those points of error in all other respects. Further, OPC argues that the Commission erred in the standard it used to determine whether to grant deferred-accounting treatment to CP & L and HL & P. Also, OPC argues that the Commission erroneously failed to consider the effect of regulatory lag on ratepayers. Based on our reasoning set forth in *Office of Pub. Util. Counsel v. PUC*, 808 S.W.2d at 500–01, we reject these arguments as well. Therefore, we overrule OPC's third and fourth points of error in both Nos. 3–90–259–CV and 3–90–260–CV.

## CONCLUSION

Based on our foregoing discussion, we reverse the trial court's judgments in both 3–90–259–CV and 3–90–260–CV to the extent they uphold deferred-accounting treatment of carrying costs; we affirm the trial court's judgments in all other respects.