STATE V. CP&L 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



NO. 3-90-259-CV




STATE OF TEXAS AND


OFFICE OF PUBLIC UTILITY COUNSEL,


 
 APPELLANTS


vs.




PUBLIC UTILITY COMMISSION OF TEXAS AND

CENTRAL POWER AND LIGHT COMPANY,


 APPELLEES


 



NO. 3-90-260-CV



STATE OF TEXAS AND

OFFICE OF PUBLIC UTILITY COUNSEL,


APPELLANTS


vs.



PUBLIC UTILITY COMMISSION OF TEXAS AND

HOUSTON LIGHTING AND POWER COMPANY,


APPELLEES


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NOS. 467,587 AND 467,589, HONORABLE W. JEANNE MEURER, JUDGE 



 




 Central Power and Light Company ("CP&L") and Houston Lighting and Power
Company ("HL&P") applied to the Public Utility Commission (the "Commission") for deferred-accounting treatment of certain costs associated with a new nuclear power plant in Matagorda
County, Texas, known as the South Texas Project. The Commission granted the applications, and
the district court upheld the Commission's orders granting the requests. The State of Texas, on
behalf of certain State agencies, and the Office of Public Utility Counsel ("OPC") appeal that
judgment to this Court. We will affirm in part and reverse in part. 


BACKGROUND


 In 1972, HL&P, CP&L, the City of Austin, and the City of San Antonio began
construction of a two-unit nuclear generating station in Matagorda County, Texas, known as the
South Texas Project. Unit One of the South Texas Project ("STP-1") was completed and began
commercial operation on August 25, 1988. Under standard accounting procedures, CP&L and
HL&P would have stopped accruing Allowance for Funds Used During Construction ("AFUDC")
at that time and would have begun charging operations and maintenance, depreciation, insurance,
and taxes as expenses against income. HL&P and CP&L contend that in the interval between the
time STP-1 was placed in service and the time the plant would be included in rate base (i.e., the
"regulatory-lag" period), HL&P and CP&L would have incurred operating costs and carrying
costs on their invested funds that they would never recover. Therefore, both CP&L and HL&P
applied to the Commission for deferred-accounting treatment ("DAT") of such costs during the
regulatory-lag period.

 In Docket No. 8230 the Commission granted HL&P's request for DAT for a period
from August 25, 1988, to no later than November 23, 1989. Later, in Docket No. 9010, the
Commission extended HL&P's deferral period beyond November 23, 1989, until such time as the
cost of STP-1 was reflected in rates approved by the Commission. In Docket No. 7560 the
Commission granted CP&L's request for DAT for a period from August 25, 1988, to no later
than February 15, 1990. By granting DAT during such time periods, the Commission allowed
CP&L and HL&P to capitalize their costs associated with STP-1 during those periods and carry
them as separate assets on their balance sheets. The reasonableness of the amount of the costs was
to be determined by the Commission in a separate ratemaking proceeding in which the balance-sheet asset consisting of the deferred costs would be reviewed using the same criteria as any other
asset. (1)

 The State of Texas and OPC sought judicial review of the Commission's orders
granting DAT to CP&L and HL&P. In the district court, Cause No. 467,589 involved the review
of the Commission's orders in Docket Nos. 8230 and 9010 (i.e., the orders granting DAT to
HL&P). Cause No. 467,587 involved the review of the Commission's order in Docket No. 7560
(i.e., the order granting DAT to CP&L). The district court upheld all three orders, and the State
and OPC appealed to this Court. On appeal, Cause No. 467,587 has been assigned No. 3-90-259-CV, and Cause No. 467,589 has been assigned No. 3-90-260-CV. The causes were consolidated
in this Court for purposes of oral argument, and the bases for our decisions in both will be set
forth in this opinion.


JURISDICTION


 Through a combination of five points of error, the State asserts that neither this
Court nor the court below has jurisdiction to review the Commission's orders in Docket Nos.
8230, 9010, and 7560. First, the State argues that these orders are not final orders. The State
further argues that even if the order in No. 8230 is final, the trial court erred in failing to rule that
No. 9010 was void for want of jurisdiction because the two dockets involved similar issues of fact
and law. In this regard, the State asserts that the appellees waived any argument that the two
dockets involved different issues because in the process of seeking consolidation, the appellees
claimed that the two dockets involved the same issues. Finally, the State argues that it is hindered
in presenting this waiver argument on appeal because the trial court failed to enter conclusions of
law.


1. Finality of the Orders

 Only "[a] person who has exhausted all administrative remedies available within
the agency and who is aggrieved by a final decision in a contested case is entitled to judicial
review . . . ." See Administrative Procedure and Texas Register Act ("APTRA"), Tex. Rev. Civ.
Stat. Ann. art. 6252-13a, §§ 16, 19(a) (West Supp. 1992); Public Utility Regulatory Act
("PURA"), Tex. Rev. Civ. Stat. Ann. art. 1446c, § 4 (West Supp. 1992). Therefore, for a party
to obtain judicial review of an administrative order, the order must be final and appealable. PACE
v. Texas Air Control Bd., 725 S.W.2d 810, 811 (Tex. App.--Austin 1987, writ ref'd n.r.e.).

 The State argues that the orders in Nos. 8230 and 7560 were not final because the
Commission reserved the power to decide whether HL&P and CP&L should be granted DAT
beyond November 23, 1989, and February 15, 1990, respectively. We disagree.

 The relevant portion of the order in No. 8230 provided the following:


1. Houston Lighting and Power Company (HL&P or the Company) shall continue
to accrue AFUDC on the Company's investment in the South Texas Nuclear
Project-1 (STP-1) and to defer and capitalize the depreciation, operations and
maintenance, insurance, and tax expenses associated with STP-1 from August 25,
1988, until the earlier of either the date rates which reflect those costs are effective
or November 23, 1989. If by November 23, 1989, rates are not in effect that
reflect the prudently incurred costs of the plant, HL&P may file a petition with the
Commission alleging what extraordinary circumstances, if any, exist which would
warrant an extension of the deferral period beyond November 23, 1989.


The relevant portion of the order in No. 7560 was essentially the same as that quoted above from
No. 8230. Therefore, the remaining discussion on finality will focus only on No. 8230; however,
the conclusions we reach apply to both.

 A final administrative order is one that leaves nothing open for future disposition. 
PACE, 725 S.W.2d at 811. So long as matters remain open, unfinished, or inconclusive, there
is no final decision. Id. However, final orders are not limited to the last order in a proceeding. 
Texas Gen. Indem. Co. v. Strait, 673 S.W.2d 334, 336 (Tex. App.Corpus Christi 1984, writ
ref'd n.r.e.). On the issue of finality of administrative orders, the Texas Supreme Court recently
wrote:


Although there is no single rule dispositive of all questions of finality, courts
should consider the statutory and constitutional context in which the agency
operates, and should treat as final a decision "which is definitive, promulgated in
a formal manner and one with which the agency expects compliance." 5 J. Stein,
G. Mitchell & B. Mezines, Administrative Law 48-10 (1988). Administrative
orders are generally final and appealable if "they impose an obligation, deny a
right or fix some legal relationship as a consummation of the administrative
process."


Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers, 806 S.W.2d 230, 232 (Tex.
1991).

 Certainly the order in No. 8230 was formally promulgated. Further, it was both
definitive and conclusive. The order left nothing open to dispute concerning HL&P's right to
DAT for the stated period of time. Also, despite the State's argument to the contrary, this right
was in no way affected by the provision in the order allowing the Commission to determine later
if HL&P could defer expenses for a period beyond November 23, 1989. The order in No. 8230
did not authorize the Commission to reconsider its decision to grant HL&P's request for DAT for
the period up to November 23, 1989; rather, it allowed the Commission to consider facts and
circumstances that might exist after that date. Therefore, we conclude that the order in No. 8230
was both definitive and conclusive as to HL&P's right to DAT for the period from August 25,
1988, to no later than November 23, 1989. Cf. PACE, 725 S.W.2d at 811.

 The State also points out that in No. 8230, the Commission reserved decision-making on whether HL&P should be granted DAT beyond November 23, 1989, even though
HL&P requested such treatment until rates reflecting the deferred expenses were in effect. The
State asserts that the denial of DAT for the full period requested meant that HL&P failed to carry
its burden of proof before the Commission. The State argues that the Commission had no
authority to allow HL&P to relitigate an issue it had previously lost.

 In support of its argument, the State cites Coalition of Cities for Affordable Utility
Rates v. PUC, 798 S.W.2d 560 (Tex. 1990). In Coalition of Cities, the supreme court held "that
the doctrines of res judicata and collateral estoppel bar a utility from relitigating before the PUC
the prudence of its past investment for inclusion in that utility's rate base." Id. at 565. In so
holding, the court reasoned:


At issue here is not increased operating expenses or the appropriate rate of
return--factors that can change over time. Rather, every fact involved is historical;
the amount and wisdom of these construction expenditures will remain constant no matter how many times the PUC permits relitigation addressing them. 
. . . Were this not true, imposition of res judicata principles would be
inappropriate.


Id. at 563. Unlike Coalition of Cities, however, in the present case not every fact was historical. 
On its face, the order in No. 8230 showed that the Commission knew it was dealing with facts that
could change over time. When the order was issued, the circumstances were such that the
Commission granted DAT to no later than November 23, 1989. However, realizing that the
circumstances could change, the Commission reserved the option to order DAT for a period
beyond November 23, 1989, if the circumstances warranted. Because not every relevant fact in
the case at bar was historical, and because the Commission was dealing with factors that could
change over time, we determine that the application of res judicata would be inappropriate in this
case.

 Finally, the State argues that the orders in Nos. 8230, 9010, and 7560 were not
final because the Commission reserved, until a subsequent docket, any decision on the amount of
the deferred expenses that HL&P and CP&L could include in rate base. The order in No. 9010
provided, in relevant part, that "[t]he deferred expenses themselves are not to be recovered until
the next rate case after Docket No. 8425." The order in No. 8230 provided:


4. Capitalized costs shall be subject to review by the Commission in HL&P's
subsequent ratemaking dockets. Those costs will be included in invested capital
to the extent and only to the extent that the Commission determines that they are
prudent, reasonable, and necessary expenses and that they are related to property
that is used and useful in providing service.

Again, the relevant portion of the order in No. 7560 provided essentially the same as that quoted
above from No. 8230. (2)

 In support of its argument, the State cites several cases for the proposition that an
administrative order is not final if rights conferred therein are made contingent on the occurrence
of some future event. See Mahon v. Vandygriff, 578 S.W.2d 144, 147 (Tex. Civ. App.Austin
1979, writ ref'd n.r.e.). First, we note that the Texas Supreme Court has disapproved of this
language as being overbroad. See Texas-New Mexico Power Co., 806 S.W.2d at 231. Indeed,
the supreme court has recognized that the presence of a condition in an order does not
automatically destroy its finality. Id. Further, we fail to see how the rights conferred in the
orders in question were contingent on any future event. The orders gave HL&P and CP&L the
right to defer expenses for a stated period of time. Whether these expenses were prudent,
reasonable, and necessary, and therefore included in the invested capital on which rates were
based, is a different issue. The orders gave the utilities the right to DAT for a stated period of
time, and this right of deferral was not contingent on any future event.

 For the reasons discussed above, we conclude that the orders in Nos. 8230, 9010,
and 7560 were final orders and are, therefore, ripe for judicial review. (3) We now address the
State's similar-issues argument.

2. Similar Issues of Fact and Law

 The State next contends that even if the order in No. 8230 is a final order, the trial
court erred in denying the State's motion to dismiss for want of jurisdiction in No. 9010 because
the two dockets involved similar issues of fact and law. The State argues that despite HL&P's
request in No. 8230 for DAT for the full period of time from dedication to rate recognition, the
Commission granted DAT for only part of the period requested. The State further argues that the
Commission, in No. 9010, effectively set aside part of the order in No. 8230 and granted relief
it had previously denied. The State asserts that the Commission lacked jurisdiction to do this
because the State had already sought judicial review of the No. 8230 decision.

 Under Texas law, when a suit is brought to test the validity of an agency order, the
agency loses jurisdiction over the subject matter of such order while the suit is pending. South
Tex. Indus. Serv., Inc. v. Texas Dep't of Water Resources, 573 S.W.2d 302, 304 (Tex. Civ.
App.Austin 1978, writ ref'd n.r.e.). However, an agency often has the right to reopen a matter
and issue a different order on a showing of changed circumstances. Id. The agency loses
jurisdiction only over the subject matter of the original order. Id. In the case at bar, the order
in No. 8230 dealt only with the right to DAT for the period ending November 23, 1989. The
order expressly reserved the right to make a decision concerning changed circumstances in a later
docket. By appealing the order in No. 8230, the State only precluded the Commission from reconsidering the subject matter of the original orderthe right to DAT for the period up to
November 23, 1989. In No. 9010, the Commission did not reconsider the subject matter of No.
8230. Instead, the Commission dealt with the circumstances as they existed after November 23,
1989. Therefore, we conclude that the Commission did not lack jurisdiction to consider No.
9010.

 The State also argues that by agreeing to the consolidation of No. 8230 and No.
9010 in the court below, HL&P and the Commission are somehow estopped from arguing that
these dockets did not involve similar issues of law and fact, and, therefore, are further estopped
from arguing that the Commission had jurisdiction over No. 9010. We disagree. Rule 174 of the
Texas Rules of Civil Procedure provides that a court may consolidate two or more actions if the
actions involve a common question of law or fact. Clearly, Nos. 8230 and 9010 involved a
common question of law--whether the Commission had the authority to allow DAT after a project
has been dedicated to public use. However, that common question is not relevant to whether the
Commission had jurisdiction to consider No. 9010. Although Nos. 8230 and 9010 involved a
common question of law, they did not involve the same subject matter--each dealt with the
possibility of DAT for two different time periods. We conclude, therefore, that the fact that the
Commission and HL&P agreed to the consolidation of Nos. 8230 and 9010 at the trial court level
did not preclude the Commission from arguing it had jurisdiction over the subject matter of No.
9010.

 Finally, the State argues that the trial court erred by failing to file conclusions of
law when they were properly requested. Based on our conclusions reached above, this argument
is without merit. Further, even if requested, the trial court need not file findings of fact and
conclusions of law following rendition of judgment in a suit for judicial review under APTRA. 
See Galveston Bay Conservation and Preservation Ass'n v. Texas Air Control Bd., 586 S.W.2d
634, 639 (Tex. Civ. App.Austin 1979, writ ref'd n.r.e.). Finally, even if the trial court erred
by failing to file conclusions of law, such error did not prevent the State from making a proper
presentation of the cause to this Court. 

 For the foregoing reasons, we conclude that the orders in Nos. 8230, 9010, and
7560 were all final orders. We also conclude that the Commission did not lack jurisdiction over
No. 9010. Therefore, we overrule the State's first, second, third, and fourth points of error
asserted in No. 3-90-260-CV; we also overrule the State's first point of error in 3-90-259-CV.


RATEMAKING PROCEEDING


 The State and OPC also argue that Docket Nos. 8230, 9010, and 7560 were
actually ratemaking proceedings, and, therefore, the Commission erred in failing to follow the
ratemaking procedures set forth in PURA § 43. We disagree. This Court has held that a
proceeding in which deferred accounting is permitted, but which does not purport to fix new rates,
is not a rate case. See Office of Pub. Util. Counsel v. PUC, 808 S.W.2d 497, 499-500 (Tex.
App.Austin 1990, writ requested). Therefore, in No. 3-90-259-CV we overrule the State's third
point of error and OPC's first point of error. In No. 3-90-260-CV we overrule the State's sixth
point of error and OPC's first point of error.


DEFERRED-ACCOUNTING TREATMENT


 As discussed above, the Commission granted CP&L and HL&P's request for
deferred-accounting treatment of carrying costs, depreciation, operation and maintenance,
insurance, and tax costs beginning August 25, 1988 (the date STP-1 went into commercial
operation). The State argues that such action violates PURA §§ 39 and 41(a), and both the State
and OPC argue that such action constitutes illegal retroactive ratemaking.

 This Court recently addressed these same arguments in City of El Paso v. PUC,
No. 3-90-007-CV (Tex. App.Austin, August 26, 1992, n.w.h.). Based on our reasoning in City
of El Paso, we hold that to the extent the Commission granted deferred-accounting treatment to
CP&L and HL&P for carrying costs associated with STP-1 during the regulatory-lag period, it
violated PURA § 41(a). As for the remaining costs associated with STP-1 during the regulatory-lag period (i.e., operating and maintenance, tax, etc.), we conclude, for the reasons set forth in
City of El Paso, that deferred-accounting treatment of such costs neither violates PURA nor
constitutes illegal retroactive ratemaking.

 Therefore, in No. 3-90-259-CV we sustain the State's fourth point of error to the
extent it pertains to carrying costs and overrule the point to the extent it pertains to the remaining
deferred costs. Also, we overrule the State's second point of error and OPC's second point of
error regarding retroactive ratemaking to the extent they pertain to costs other than carrying costs;
we do not address whether deferring carrying costs amounts to retroactive ratemaking. In No.
3-90-260-CV we sustain the State's seventh point of error to the extent it pertains to carrying costs
and overrule the point to the extent it pertains to the remaining deferred costs. Also, we overrule
the State's fifth point of error and OPC's second point of error regarding retroactive ratemaking
to the extent it pertains to costs other than carrying costs; again, we do not address whether the
deferral of carrying costs amounts to retroactive ratemaking.

 Finally, in three rather confusing points of error, the State argues that various
aspects of the Commission's orders in Nos. 8230, 9010, and 7560 are not supported by substantial
evidence. Because of our holding above that the Commission violated PURA section 41(a) in
allowing deferred accounting treatment of carrying costs, we do not address whether such action
was supported by substantial evidence. To the extent the State argues that other aspects of the
Commission's orders are not supported by substantial evidence, we conclude that the record
contains ample evidence to support the Commission's orders. Therefore, we do not address the
State's fifth point of error in No. 3-90-259-CV and its eighth and ninth points of error in 3-90-260-CV to the extent they attack the deferred-accounting treatment of carrying costs; we overrule
those points of error in all other respects. Further, OPC argues that the Commission erred in the
standard it used to determine whether to grant deferred-accounting treatment to CP&L and HL&P. 
Also, OPC argues that the Commission erroneously failed to consider the effect of regulatory lag
on ratepayers. Based on our reasoning set forth in Office of Pub. Util. Counsel v. PUC, 808
S.W.2d at 500-01, we reject these arguments as well. Therefore, we overrule OPC's third and
fourth points of error in both Nos. 3-90-259-CV and 3-90-260-CV.



CONCLUSION


 Based on our foregoing discussion, we reverse the trial court's judgments in both
3-90-259-CV and 3-90-260-CV to the extent they uphold deferred-accounting treatment of
carrying costs; we affirm the trial court's judgments in all other respects.



 

 J. Woodfin Jones, Justice

[Before Justices Powers, Aboussie and Jones]

Affirmed in Part; Reversed and Rendered in Part on Both Causes

Filed: September 16, 1992

[Publish]
1. For a more complete discussion of "regulatory lag" and "deferred-accounting treatment,"
see City of El Paso v. PUC, No. 3-90-007-CV (Tex. App.Austin, August 26, 1992, n.w.h.).
2. At oral argument, counsel for CP&L candidly admitted that the order in No. 7560,
which provided that the deferred costs in that case were to be included "in cost of service, and
a return allowed on the unamortized balance," effectively treated such costs as invested
capital.
3. In so holding, we do not address whether the wording of the orders precludes the
Commission from considering related recoverability issues in later rate cases. Cf. Business &
Prof. People for the Pub. Interest v. Illinois Commerce Comm'n, 585 N.E.2d 1032, 1058-63
(Ill. 1991). We hold only that the orders were sufficiently definite, as to the issue decided, to
constitute final and appealable orders.