**TEXAS–NEW MEXICO POWER COMPANY, Petitioner,**

v.

**TEXAS INDUSTRIAL ENERGY CONSUMERS, Respondent.**

**No. C–9953.**

Supreme Court of Texas.

April 3, 1991.

W. Mike Baggett, Jack M. Rains, Jeff Joyce, Wayne W. Bost, Dallas, Michael G. Shirley, Phyllis B. Schunck, Austin, for petitioner.

Louis S. Zimmerman, Bruce Morris, Austin, Jonathan Day, Alton J. Hall, Russell C. Shaw, Houston, Cathy Lee Jordan, Austin, for respondent.

## OPINION

DOGGETT, Justice.

In this appeal, we consider whether an order of the Public Utility Commission of Texas (PUC) conditionally approving a certificate of convenience and necessity for construction of a power plant was final and appealable. Agreeing with Texas Industrial Energy Consumers (TIEC) that the order lacked finality, the trial court dismissed the administrative appeal for want of jurisdiction. The court of appeals affirmed. 786 S.W.2d 795 (1990). We reverse the court of appeals and remand to the trial court for further proceedings.

In 1986, Texas–New Mexico Power Company (TNP) filed an application seeking a certificate to construct a multi-unit power plant. In its order of approval, the PUC imposed the following restrictions:

1.  The application filed by Texas–New Mexico Power Company (TNP) for certification of four units of an electric generation station in Robertson County, Texas is APPROVED as conditioned in Paragraph No. 2 below.

2.  TNP's certificate is conditional upon: (1) the execution of a change order between TNP and the consortium as provided in Article 8 of TNP Ex. 18, providing design changes to allow for the use of western coal as a fuel in the Robertson facility; and (2) the receipt by TNP or the consortium of all necessary permits from other state and federal agencies necessary for the construction and operation of the Robertson facility. TNP shall file notice with the Commission's general counsel of its compliance with the conditions stated above.

Tex. Public Util. Comm'n, *Application of Texas–New Mexico Power Company for Certification of a Lignite Fired Electrical Generation Station in Robertson County, Texas*, Docket No. 6992 (August 17, 1987). Although this action authorized four units, TNP subsequently decided to build only two and obtained a conforming amendment to the certificate.[1]

According to the court of appeals, the absence of "the necessary permits from the other agencies" and the inability "to know when, and if, [TNP] would succeed in obtaining the approval of those agencies" made the PUC order conditional and therefore nonfinal and unappealable.[2] 786 S.W.2d at 796–97. The underlying rationale that "an administrative order is not final if rights conferred therein are made contingent upon the occurrence of some future event" is overbroad. *Id.*[3] Indeed, we have previously recognized that the presence of a condition in an order does not automatically destroy its finality. *Big Three Indus. v. Railroad Comm'n*, 618 S.W.2d 543, 548 (Tex.1981) (determining as final an order conditioned upon the outcome of an unresolved related case); *see also Browning–Ferris, Inc. v. Johnson*, 644 S.W.2d 123, 127 (Tex.App.—Austin 1982, writ ref'd n.r.e.); *Walker Creek Homeowners v. Texas Dep't of Health Resources*, 581 S.W.2d 196, 198 (Tex.Civ.App. —Austin 1979, no writ).

An examination of the process for obtaining one of the permits upon which the Commission conditioned TNP's certificate reveals a potentially impossible Catch–22

---

1.  Since abandonment of units three and four was subsequently approved, any alleged contingency in the 1987 order regarding them has been extinguished and need not now be considered by us. *See Big Three Indus. v. Railroad Comm'n*, 618 S.W.2d 543, 548 (Tex.1981).

2.  Only "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 16, 19(a) (Vernon Supp.1991) (APTRA); Texas Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c, § 4 (Vernon Supp.1991) (PURA). Because the order contested here satisfies the minimal requirements for finality in Section 16 of APTRA, our decision turns on judicial factors concerning what constitutes a final decision.

3.  We also disapprove the overbreadth of similar language in *Mahon v. Vandygriff*, 578 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.): "If a right is made contingent upon the occurrence of some future event, the order is not final."

predicament[4] in which a utility would be placed if the arguments of TIEC were accepted. Before it can build a new power plant, a utility must obtain a certificate from the PUC. *See* Texas Public Utility Regulatory Act, Tex.Rev.Civ.Stat.Ann. art. 1446c, § 50 (Vernon Supp.1991) (PURA). Prior to receiving this approval, TNP must acquire all the necessary permits from various governmental agencies. These entities, however, cannot statutorily issue all permits until construction has begun or is completed. For example, only after sixty days of operation may TNP apply for an operating permit under the Texas Clean Air Act. *See* Tex. Health & Safety Code Ann. § 382.054 (Vernon 1991); Tex. Air Control Bd., 31 Tex.Admin.Code §§ 116.-1(a), 116.3(b)(2) (West Supp. June 14, 1990).

Shuffling citizens in such an endless, inefficient circle from one agency to the next in search of permits, licenses, and stamps of approval that cannot be issued until some other office acts represents government at its worst. Businesses ensnarled in such bureaucratic traps cannot provide the productive force so vital to our state's prosperity. Government and business cannot work together when pointless delays stifle the very flame of initiative the law was designed to nurture. We must not have the type of cumbersome government that an earlier generation described as leaving its citizens "[s]kewered through and through with officepens, and bound hand and foot with red tape." C. Dickens, *David Copperfield* 606 (Dodd, Mead, & Co. ed. 1936).

A more pragmatic and flexible approach must be employed to evaluate the finality of an agency's order. This requires recognition of the need both to minimize disruption of the administrative process and to afford regulated parties and consumers with an opportunity for timely judicial review of actions that affect them. Although there is no single rule dispositive of all questions of finality,[5] courts should consider the statutory and constitutional context in which the agency operates, and should treat as final a decision "which is definitive, promulgated in a formal manner and one with which the agency expects compliance." 5 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* 48–10 (1988). Administrative orders are generally final and appealable if "they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." *Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 224 (9th Cir.1988).

In reviewing the statutory context in which the instant order was issued, we note that the Texas Public Utility Regulatory Act (PURA) balances the important objective of protecting consumers from monopoly power with the demand for stability required to attract the large amounts of investment essential to dependable utility service. PURA, § 2. Both goals are served by mandating the utility to show "that the present or future public convenience and necessity requires or will require" proposed new construction. *Id.* at § 50(1). Obtaining a certificate is only the first step in the regulatory process. Given the PUC's continuing responsibility to monitor a utility's conduct to ensure full compliance with the public interest, it is empowered to enforce its orders and, under certain limited circumstances, to revoke a previously granted certificate. PURA, §§ 71, 62(a).

The nature of this certification process highlights both the necessity and advantages of a conditional approval. By requiring the subsequent receipt of all necessary

---

**4.** As the fictional Captain Yossarian learned during World War II, pilots would not be granted a reprieve from combat unless they were crazy; but to be relieved from duty, permission had to be requested. The "catch" was that by making a request one demonstrated sanity, thereby ensuring a denial. J. Heller, *Catch-22* 46 (1961).

**5.** Nor must the same rule be applied where the effect is to deny a right of appeal. "The fact that in retrospect a court is prepared to believe that it would have found finality earlier, under a flexible pragmatic approach, does not always mean that a party who preferred to pursue the administrative process further should forfeit the right to any review." 16 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3942, at 316 (Supp.1990).

permits, the PUC retains broader enforcement powers to monitor utilities' compliance with the relevant statutes and regulations. Adopting the suggestion of TIEC at oral argument that finality be achieved by striking "every reference to 'condition' in the order" would only restrict the PUC's authority to oversee the project.

By recognizing this conditional certification as final, the court has not, as TIEC further contends, removed consumers' important right to challenge utilities. The certificate of convenience and necessity affords only a right to begin construction, not a guarantee that every inefficient or imprudent expenditure will be passed on to the consuming public. When a new installation begins supplying service, the PUC must still determine what portion of the investment is properly chargeable to ratepayers with the burden of proving "the prudence and reasonableness of [each element of] its expenditures" firmly fixed on the utility. *Coalition of Cities v. Public Util. Comm'n*, 798 S.W.2d 560, 563 (Tex. 1990). Hence ratepayers such as TIEC are afforded safeguards as the Commission establishes "just and reasonable" rates in accord with the statutory factors. PURA, §§ 38, 39, 41, 43 (including "the quality of the utility's services, the efficiency of the utility's operations, and the quality of the utility's management").

According finality to an order containing the conditions involved in this particular statutory setting allows both a regulated interest and consumers such as TIEC to deter any potential abuse of government power by seeking timely, preconstruction judicial review. A contrary holding would insulate from prompt, independent scrutiny an administrative body that retained jurisdiction by indefinitely making its decision subject to the most minor condition.

We believe that paragraph one of this formally promulgated order underscores its definitiveness: the PUC "APPROVED" TNP's application for a certificate; albeit "as conditioned" in paragraph two. This explicit approval is final and the conditions do not diminish or eliminate its effect. Reflecting the consummation of six weeks of administrative hearings, the certificate imposed a clear obligation on the utility and fixed its legal relationship. Certainly the PUC expected TNP's compliance with the order, and it was statutorily empowered to compel that compliance through an enforcement action under section 71 of PURA.

Under these circumstances, we hold that the PUC's 1987 order approving the certificate of convenience and necessity as to units one and two was final and appealable. We reverse the judgment of the court of appeals and remand this cause to the trial court for consideration on the merits.

MAUZY, Justice, concurring.

I concur in the Court's holding that the 1987 order was final and appealable. That order purported to establish the parties' rights and obligations, and was immediately enforceable. In such circumstances, the right to seek judicial relief should not depend upon the vagaries of future governmental action. *See Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir.1988).

The right of immediate appeal is especially important as to proceedings involving public utilities. Given the public interest at stake, courts must approach such proceedings in a spirit of pragmatism, rather than dogmatism. In this case, pragmatism called for prompt review of the PUC's 1987 order.