**GARRETT OPERATORS, INC.
and George Thomas Cox,
Appellants,**

v.

**The CITY OF HOUSTON, Appellee.**

**No. 01–09–00946–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 12, 2011.

Rehearing Overruled July 18, 2011.

Jeffrey L. Dorrell, Dorrell & Farris, L.P., Houston, TX, for Appellants.

Hope E. Hammill–Reh, Senior Assistant City Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

LAURA C. HIGLEY, Justice.

Appellants Garrett Operators, Inc. and George Thomas Cox appeal the trial court's grant of appellee City of Houston's plea to the jurisdiction on all of appellants' claims and of the City of Houston's objections to appellants' discovery requests and deposition notice. In five issues, appellants argue the trial court erred by (1) dismissing Garrett Operators' inverse condemnation claim; (2) dismissing Garrett Operators' declaratory judgment action; (3) dismissing Garrett Operators' and Cox's section 1983 claims; (4) dismissing Garrett Operators' and Cox's due course of law claims; (5) quashing Garrett Operators' deposition of the City; and (6) sustaining the City of Houston's objections to 39 of Garrett Operators' requests for production.

We affirm.

## Background

Garrett Operators holds a lease on a small parcel of land located in Houston,

Texas. The only significant structure on this parcel of land is an advertising billboard. George Thomas Cox is the sole owner of Garrett Operators.

Cox met with Susan Luycx, division manager of the Houston Sign Administration, in January 2008 to discuss Cox's plans to install an LED display on his billboard. According to Cox's affidavit, Luycx informed Cox that it was "illegal in the City of Houston for sign owners to use an LED display on a sign." Cox told Luycx that the Sign Code did not mention LED lighting, to which Luycx responded that "we are likely to change the sign code."

Subsequently, Garrett Operators' counsel sent a letter to Luycx describing the proposed installation and asserting that the Sign Code does not require a permit for the installation. Luycx responded, stating that "although your client has yet to formalize his intentions with this office, and based solely on the information currently available to us, your client's proposal contravenes and would be in direct violation of the City's Sign Code."

On July 12, 2008, Garrett Operators attempted to install the LED display on his billboard. Before work began, however, Luycx appeared and issued a stop order on the work. The basis given for the stop order was "No permits on file. No permits on site. Permits are required to chance structure of sign. (L.E.D. boards were being added.)"

On December 5, 2008, Garrett Operators and Cox filed suit against the City of Houston in a Harris County civil court at law. They asserted claims for inverse condemnation, declaratory judgment, violation of section 1983 of title 42 of the United States Code, and violation of their state constitutional due course of law rights. On December 10, 2008, the City of Houston enacted an ordinance that amended the Houston Sign Code to explicitly prohibit "off-premise electronic signs," a category into which Garrett Operators' sign falls. Plaintiffs subsequently amended their petition, including in their declaratory judgment action a claim that the 2008 amendments to the Sign Code did not apply to them.

The City of Houston filed a plea to the jurisdiction arguing, among other things, the inverse condemnation claim was not ripe and that the other claims were outside the legislatively prescribed subject-matter jurisdiction of the court. The trial court granted the plea to the jurisdiction on each of Plaintiffs' claims, dismissing the suit. Prior to that, however, the trial court quashed a deposition notice and sustained the City of Houston's objections to certain discovery requests.

### Plea to the Jurisdiction

In their first four issues, Garrett Operators and Cox argue that the trial court erred by granting the City of Houston's plea to the jurisdiction on all of their claims.

### A. Standard of Review and Applicable Law

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). Because subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction. *State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007).

The plaintiff bears the initial burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction over a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When a plea

to the jurisdiction challenges the sufficiency of plaintiff's pleadings to confer jurisdiction, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition. *Id.* at 227. Otherwise, if the pleadings do not affirmatively demonstrate the trial court's jurisdiction, the plaintiff should be afforded the opportunity to amend its petition. *Id.* at 226–27.

## B. Analysis

Garrett Operators brought four causes of action against the City of Houston: (1) an inverse condemnation claim; (2) a declaratory judgment action; (3) a federal section 1983 claim; and (4) a state due course of law claim. Cox joined the federal section 1983 and state due course of law claims but not the inverse condemnation claim or the declaratory-judgment actions.

### 1. Inverse Condemnation Claim

Garrett Operators brought an inverse condemnation claim based on a regulatory taking under the Texas Constitution. *See* Tex. Const. art. I, § 17. County civil courts at law in Harris County have exclusive jurisdiction over eminent domain proceedings, including claims for inverse condemnation. Tex. Gov't Code Ann. § 25.1032(c) (Vernon 2004).

The City of Houston argued in its plea to the jurisdiction that Garrett Operators failed to allege any element of a regulatory takings claim. The City of Houston also argued that the trial court lacks subject-matter jurisdiction because Garrett Opera-

tors' inverse condemnation claim is not ripe.

■ We first address the City of Houston's ripeness claim. The City of Houston argues that Garrett Operators' inverse condemnation claim is not ripe due to Garrett Operators' alleged failure to obtain a final decision. Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Patterson v. Planned Parenthood of Houston & SE Tex., Inc.,* 971 S.W.2d 439, 442 (Tex.1998). While the jurisdictional issue of standing focuses on who may bring an action, ripeness focuses on when that action may be brought. *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000).

The City of Houston relies on the Texas Supreme Court's opinion in *Mayhew* in support of its ripeness claim. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922 (Tex.1998). In *Mayhew,* the Texas Supreme Court held, "in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue." *Id.* at 929. In that case, the takings claim concerned zoning restrictions. *Id.* at 926. The court held, for zoning takings claims, "futile variance requests or re-applications are not required." *Id.* at 929. The City of Houston argues that, because Garrett Operators did not appeal "the issuance of the Stop Order to the City's General Appeals Board and then to City Council," it has failed to exhaust its administrative remedies.

■ The requirement of a final decision and the question of exhaustion of administrative remedies, however, are distinct and separate inquiries. *Maguire Oil Co. v. City of Houston,* 243 S.W.3d 714, 718–19 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). The requirement of a final decision, in context of an inverse condemnation case, concerns whether the gov-

ernmental entity charged with implementing the regulation that allegedly caused the taking has fixed some legal relationship between the parties. *Texas–New Mexico Power Co. v. Tex. Indust. Energy Consumers,* 806 S.W.2d 230, 232 (Tex. 1991). In contrast, exhaustion of administrative remedies concerns whether an agency has exclusive jurisdiction in making an initial determination on the matter in question and whether the plaintiff has exhausted all required administrative remedies before filing a claim in the trial court. *See In re Entergy Corp.,* 142 S.W.3d 316, 321–22 (Tex.2004).

We determine first, then, whether there is a final decision by the City of Houston. While there is no single rule that controls all questions of finality, at the very least, a decision by an agency is final if it is (1) definitive; (2) promulgated in a formal manner; and (3) one with which the agency expects compliance. *Texas–New Mexico Power Co.,* 806 S.W.2d at 232. Otherwise, "[a]dministrative orders are generally final and appealable if 'they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Id.* (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n,* 862 F.2d 222, 224 (9th Cir.1988)).

To determine whether there has been a final decision, we must compare the complaints presented by Garrett Operators to actions taken by the City of Houston to determine whether the City of Houston has made a final decision concerning Garrett Operators' complaints. The arguments underlying both Garrett Operators' inverse condemnation claim and declaratory judgment action are (1) the Sign Code permitted installation of the LED display on its billboard; (2) a permit was not required for the installation; and (3) if it is not allowed to install the LED display, the restriction constitutes a regulatory taking for which it has not been paid.

Cox met with Luycx, division manager of the Houston Sign Administration, in January 2008 to discuss Cox's plans to install the LED display. According to Cox's affidavit, Luycx informed Cox that it was "illegal in the City of Houston for sign owners to use an LED display on a sign." Cox told Luycx that the Sign Code did not mention LED lighting, to which Luycx responded that "we are likely to change the sign code."

Subsequently, Garrett Operators' counsel sent a letter to Luycx describing the proposed installation and asserting that the Sign Code does not require a permit for the installation. Luycx responded, stating that "although your client has yet to formalize his intentions with this office, and based solely on the information currently available to us, your client's proposal contravenes and would be in direct violation of the City's Sign Code."

On July 12, 2008, Garrett Operators attempted to install the LED display on his sign. Before work began, however, Luycx appeared and issued a stop order on the work. The basis given for the stop order was "No permits on file. No permits on site. Permits are required to chance structure of sign. (L.E.D. boards were being added.)"

We do not consider Cox's meeting with Luycx to be a "final decision." Nothing was promulgated in a formal manner and there is no indication that the agency expected compliance after the conversation. *See Texas–New Mexico Power Co.,* 806 S.W.2d at 232. Similarly, there is no indication that the conversation fixed a legal relationship between the parties. *See id.*

The subsequent letter from Luycx explicitly stated that Garrett Operators had not "formalize[d] his intentions with" the

Sign Administration and that it was basing its decision only on the facts as they had been presented in an earlier letter. We interpret this language as specifically excluding a final decision by the Sign Administration. It was, instead, responding to an informal inquiry based on a hypothetical set of facts.

■ On, July 12, 2008, however, Luyex appeared and issued a stop order preventing Garrett Operators from installing the LED display. The reason given was that Garrett Operators had not obtained a permit. This is a final decision for the question of whether Garrett Operators was required to obtain a permit to install the LED display. The stop order is (1) definitive; (2) promulgated in a formal manner; and (3) one with which the Sign Administration expects compliance. *See id.* It is not a final decision, however, for the question of whether an LED display could be installed at all—that is, whether the LED display could be installed upon proper application for a permit. Accordingly, nothing in the record reflects that there has been a final decision regarding whether an LED display could be installed at all.

■ We do not need to address whether Garrett Operators was required to exhaust his administrative remedies before bringing suit on the stop order because, even without such a requirement, Garrett Operators cannot maintain a takings claim based on the argument that he has suffered a regulatory taking simply because he is not allowed to take a certain action without a permit. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 337, 122 S.Ct. 1465, 1486, 152 L.Ed.2d 517 (2002) (exclud-

ing "normal delays associated with processing permits" from takings claims). When a plaintiff does not allege a valid inverse condemnation claim, governmental immunity applies, and the trial court should grant a plea to the jurisdiction. *TCI West End, Inc. v. City of Dallas,* 274 S.W.3d 913, 916 (Tex.App.-Dallas 2008, no pet.). We hold, viewing the facts asserted by Garrett Operators in its petition in the light most favorable to it, Garrett Operators cannot maintain a takings claim against the City of Houston based on the claim that the City of Houston prohibited installation of an LED display without a permit.[1]

We overrule appellants' first issue.

**2. Plaintiffs' other causes of action**

Garrett Operators seeks a declaratory judgment that nothing in the Sign Code, as it existed at the time that Garrett Operators sought to install the LED display and at the time that Garrett Operators brought suit, "allowed the City to interfere with Garrett's upgrading its existing, lawfully-permitted, off-premise Sign with LED lighting." In conjunction, Garrett Operators also seeks a declaration from the trial court that the amendments to the Sign Code that were approved after suit was filed do not retroactively apply to Garrett or in any other way affect his claimed then-existing right to install the LED display.

■ Appellants' primary argument for why the county court has jurisdiction over their remaining causes of action is their claim that Harris County civil courts at law have jurisdiction over claims that are inherently intertwined in an eminent do-

---

1. To be clear, we make no determination in this holding on Garrett Operators' claim in its declaratory judgment action that it was not required to obtain a permit. Garrett Operators' inverse condemnation was pleaded in the alternative to the declaratory judgment action and, accordingly, presumes that he was required to obtain a permit. We hold only that this alternative takings claim cannot be maintained.

main proceeding, citing *Taub v. Aquila SW Pipeline Corp.*, 93 S.W.3d 451, 458 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because we have affirmed the dismissal of Garrett Operators' takings claim, this argument is no longer available to Appellants.

In *West*, the owner of a beauty shop brought a declaratory judgment action in a county court at law asserting that a certain statutory act requiring special compensation applied to the City of Beaumont's intended condemnation of a portion of her property. *City of Beaumont v. West*, 484 S.W.2d 789, 790–91 (Tex.Civ.App.-Beaumont 1972, writ ref'd n.r.e.). As a part of her suit, the trial court granted her injunction prohibiting the City of Beaumont from bringing a condemnation proceeding until after her declaratory judgment action had been resolved. *Id.* at 790. The Beaumont Court of Appeals noted that the county court at law would have had jurisdiction over the condemnation proceeding. *Id.* at 792. The court held, however, that this "potential jurisdiction" was not sufficient to confer jurisdiction on the county court at law for the declaratory judgment action. *Id.* at 792–93.

We agree with the analysis in *West*. Accordingly, we hold that, because the trial court properly dismissed Garrett Operators' inverse condemnation claim for lack of subject-matter jurisdiction, the county court at law's jurisdiction could not be invoked over the remaining claims by being "inherently intertwined" with the inverse condemnation claim.

■■■■ The Declaratory Judgment Act does not itself confer jurisdiction. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002). Garrett Operators argues that the Texas legislature has expressly allowed disputes over statutory construction of city regulations to be resolved in a declaratory judgment

action. *See* Tex. Loc. Gov't Code Ann. §§ 245.002(a), .006(a) (Vernon 2005). Assuming without deciding that this is a correct interpretation of the relevant statutes, this still does not confer jurisdiction on the county court at law. County courts at law are courts of limited jurisdiction. *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex.2007). Declaratory judgment actions are not generally within the jurisdiction of Harris County civil courts at law, absent some proof that the subject matter of the declaratory judgment action is one within the court's jurisdictional limits. *See Medina v. Benkiser*, 262 S.W.3d 25, 28 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (affirming dismissal when petition did not demonstrate declaratory judgment action was within county court's jurisdiction); *West*, 484 S.W.2d at 793 (same). That proof is lacking here.

■■■■ Appellants brought a section 1983 claim against the City of Houston, asserting that they had been damaged in the amount of $5,000,000. This claim alone is well outside the county court's jurisdictional limits based on the amount in controversy. *See* Tex. Gov't Code Ann. § 25.0003(c)(1) (Vernon Supp. 2011) (providing jurisdictional limits for statutory county courts at law based on amount in controversy).

■■■■ Finally, Appellants brought a due course of law claim, asserting $69,000,000 in damages. The trial court ruled that monetary damages are not available for this claim, and Appellants concede this point on appeal. Appellants argue, however, that they did plead a request for injunctive relief and claim that this is a permissible remedy under their claim. Assuming without deciding that Appellants' request for injunctive relief included relief for their due course of law claim, this still does not confer jurisdiction on the

county court. The statute conferring jurisdiction on statutory county courts at law based on amount in controversy has both a minimum and maximum limit. *Id.* This cause of action suffers from the same problem as Garrett Operators' declaratory judgment action: the claim is outside the county court's jurisdictional limits based on amount in controversy—because there is no amount in controversy—and no other statutory provision confers jurisdiction for due course of law claims on Harris County civil courts at law. *See Medina,* 262 S.W.3d at 28; *West,* 484 S.W.2d at 793.

We overrule Appellants' second, third, and fourth issues.[2]

## Conclusion

We affirm the judgment of the trial court.

**2.** Plaintiffs correctly acknowledge that their last issue on appeal, concerning the trial court's rulings on certain discovery related matters, can only be reached if the trial court had jurisdiction over any of their claims. Because we have held that the trial court lacked jurisdiction over any of Plaintiffs' claims, we overrule their last issue.