# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00408-CV

**TXI Operations LP, Appellant**

**v.**

**Texas Commission on Environmental Quality, Appellee**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-008263, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## O P I N I O N

TXI Operations LP appeals from a judgment affirming the denial of its application for an air-quality permit by the Texas Commission on Environmental Quality (Commission). TXI argues that the decision is not supported by substantial evidence and, in the alternative, that the Commission violated TXI's due process rights. We affirm.

## BACKGROUND

The Commission administers the Texas Clean Air Act (TCAA), which establishes a regulatory framework "to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants." Tex. Health & Safety Code § 382.002(a); *see id.* § 382.011(a)(1) (making Commission responsible for administering TCAA). The TCAA authorizes the Commission to issue permits "to construct a new facility or modify an existing facility that may emit air contaminants." *Id.* § 382.051(a)(1). Before

beginning work, "the person planning the construction or modification must obtain a permit or permit amendment from the commission." *Id.* § 382.0518(a). There are several available permitting mechanisms, including standard permits. The TCAA authorizes the Commission to identify similar types of air-contaminant emitting facilities and issue a standard permit applicable to all facilities in that category. *See generally id.* § 382.05195 (laying out specific requirements for standard permits).

In 2000, the Commission promulgated a standard permit for small concrete batch plants that produce no more than 300 cubic yards of concrete mix per hour.[1] The "regular" standard permit must contain enforceable emission limits and require use of the best available control technology. *See id.* §§ 382.05195(a)(3), .0518(b). A person affected by the emissions from the facility may request a contested-case hearing. *See id.* §§ 382.058(a), .056(b)(5). However, "only those persons actually residing in a permanent residence within 440 yards of the proposed plant may request a hearing under Section 382.056 as a person who may be affected." *Id.* § 382.058(c).

The legislature subsequently required the Commission to issue a new type of standard permit—one with enhanced environmental requirements and a streamlined public participation process. *See generally id*. §§ 382.05198 (enumerating nineteen requirements applicant must meet), .05199 (pertaining to public notice and participation). One of the requirements is that "the central baghouse [of the facility] must be located at least 440 yards from any building used as a single or multifamily residence, school, or place of worship at the time the application to use the permit is filed with the commission[.]" *See id.*

---

[1] The Commission explains that "[c]oncrete batch plants prepare concrete mix by adding measured amounts of sand, cement, and gravel stored in on-site silos and stockpiles to a mixing drum."

2

§ 382.05198(a)(19). The Commission must conduct a public hearing on the application in the county where the plant is to be located. *See id.* § 382.05199(b)–(g). Any person may submit oral or written comments, but a contested-case hearing is not available. *Id.* § 382.05199(f). No later than thirty-five days after the date of the hearing, "the executive director shall approve or deny the application for authorization to use the standard permit. The executive director shall base the decision on whether the application meets the requirements of Section 382.05198." *Id.* "If the executive director denies the application, the executive director shall state the reasons for the denial and any modifications to the application that are necessary for the proposed plant to qualify for the authorization." *Id.* Following the legislative directive, the Commission promulgated the Enhanced Controls Standards Permit (enhanced standard permit) in 2004.

In June of 2019, TXI applied for an enhanced standard permit for a concrete batch facility it intended to build near Farmersville. The Commission declared the application administratively complete in August 2019, and Commission staff held the public hearing on October 14, 2019. Nicholas Nopp, who owns land adjacent to the site (the Nopp Property), provided oral and written comments. In his oral comment, Nopp stated that he and his family live on the northern side of the Nopp Property and that his parents live in a structure on the southern end that is within the 440-yard setback. Nopp submitted an affidavit stating that the two structures share a common water source, and that each have their own septic system and electric meter. Both "buildings contain one or more bedrooms, bathrooms, living areas, and a kitchen." Even though Nopp's "parents are retired and they travel often in their motorcoach, the Nopp Property is their permanent residence." It is the "address where they receive all their mail" and is listed as their permanent address on their driver's licenses, voter registration cards, and

3

medical records. The Commission staff member presiding over the hearing accepted the affidavit.

Three days later, a Commission investigator visited the site to determine whether any of the structures within the setback were used as a residence. She observed in her report that the structure Nopp asserted was his parent's residence "appears to be a commercial building" and that "none of the three structures appear from the exterior to be a single or multifamily residence, school, or place of worship." However, there was "no one at any of the three structures to verify the use of the structure."

The Executive Director rejected TXI's application by letter dated October 29, 2019. The letter stated in pertinent part, "An affidavit was submitted as comment during the public hearing indicating a permanent residence is located within 440 yards of the central baghouse. Therefore, the application is denied." In November 2019, TXI filed a motion to overturn the Executive Director's decision. *See generally* 30 Tex. Admin. Code § 50.139 (2023) (Tex. Comm'n on Env't Quality, Motion to Overturn Executive Director's Decision). TXI argued that the affidavit fails to establish that there is a residence within the 440-yard setback. In the alternative, TXI argued that several allegations in the affidavit were false and attached the Nopp Affidavit, an application for a septic system permit signed by Nopp, a septic system certification signed by Nopp, and photographs of the site. The Commission requested responses from the Executive Director and the Office of Public Interest Counsel. Both submitted briefing arguing that motion-to-overturn procedure does not apply to the Executive Director's decision on an application for any standard air quality permit. The Commission took no action on the motion, and it was denied by operation of law after forty-five days. *See id.* § 50.139(f)(1).

4

TXI sought judicial review in Travis County District Court. *See* Tex. Health & Safety Code. § 382.032(a) (providing that party affected by decision may appeal by filing petition for review in Travis County district court). The district court affirmed, and this appeal followed.

**LEGAL STANDARDS**

In a suit for judicial review of an action of the Commission or the Executive Director, the "issue is whether the action is invalid, arbitrary, or unreasonable." *Id.* § 382.032(a). This Court has held that the "invalid, arbitrary, or unreasonable" standard allows the entire scope of review allowed by the substantial evidence standard codified in the Administrative Procedures Act. *Texas Comm'n on Env't Quality v. Friends of Dry Comal Creek*, No. 03-21-00204-CV, ___ S.W.3d ___, ___, 2022 WL 4540955, at *5 (Tex. App.—Austin Sept. 29, 2022, no pet.); *see generally* Tex. Gov't Code § 2001.171–.178.

Under that standard, a reviewing court shall reverse or remand a case for further proceedings if the appellant's "substantial rights" have been prejudiced "because the administrative findings, inferences, conclusions, or decisions" are, relevant here, "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole" or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code § 2001.174(2)(E)–(F). The agency decision is presumed to be valid, and the burden is on the contestant to demonstrate otherwise. *Texas Comm'n on Envt'l Quality v. Maverick County.*, 642 S.W.3d 537, 547 (Tex. 2022). Whether an agency decision meets this standard is a legal question reviewed de novo. *Id*.

The issues here raises a question of statutory interpretation, which "involves questions of law that we consider de novo, even when reviewing agency decisions." *Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019). Our objective in construing a statute is to give effect to the legislature's intent, "'which we ascertain from the plain meaning of the words used in the statute' because the best indicator of what the legislature intended is what it enacted." *Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Env't Quality*, 576 S.W.3d 374, 384 (Tex. 2019) (quoting *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016)). We do not construe individual provisions in isolation but "analyze statutes 'as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded.'" *Texas Workforce Comm'n v. Wichita County*, 548 S.W.3d 489, 492 (Tex. 2018) (quoting *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)).

## DENIAL OF APPLICATION

TXI argues in its first issue that the decision to deny its application is unsupported by substantial evidence. Before reaching that issue, we must address two predicate questions: which decision is reviewable and the meaning of "residence" in Section 382.05198(a)(19).

*Which Decision is Reviewable?*

The parties join issue over whether we should review the Executive Director's decision or the Commission's denial of the motion to overturn.

Under the TCAA, "A person affected by a ruling, order, decision, or other act of the commission or of the executive director, if an appeal to the commission is not provided, may appeal the action by filing a petition in a district court of Travis County." Tex. Health & Safety

6

Code. § 382.032(a). TXI interprets this to mean that a party may seek judicial review of a "ruling, order, decision, or other act" of the Executive Director only if "an appeal to the Commission is not provided." TXI argues that the TCAA provides such an appeal because it states that an "applicant or a person affected by a decision of the executive director may appeal to the commission any decision made by the executive director, with the exception of a decision regarding a federal operating permit, under Sections 382.051-382.055 and 382.059," and the statutes governing the enhanced standard permit are within that range. *See id.* § 382.061(b). Therefore, TXI argues that we should review the Commission's denial of TXI's motion to overturn. The Commission does not dispute that Section 382.061 provides an appeal to the Commission but insists that does not change the fact that it is only the Executive Director's decision that is subject to judicial review. The Commission argues that this Court held as much when construing Section 382.061's predecessor statute and urges us to do the same here. *See Texas Air Control Bd. v. Travis Cnty.*, 502 S.W.2d 213, 216–17 (Tex. App.—Austin 1973, no writ).

We agree with TXI. The statutes governing the enhanced standard permit— sections 382.05198 and 382.05199—are within the numerical range for which Section 382.061 provides an appeal, and we presume the legislature was aware of this. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814 (Tex. 2019) ("A statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it." (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990))). And Section 382.032(a) expressly makes the right to appeal a decision of the Executive Director contingent on the right to appeal to the commission: "A person affected by a ruling, order, decision, or other act of the commission or of the executive director, *if* an appeal to the commission is not

7

provided, may appeal the action by filing a petition in a district court of Travis County." Tex. Health & Safety Code § 382.032(a) (emphasis added). Reading those provisions together, a party affected by a decision of the Executive Director where an appeal is provided—including a decision on an enhanced standard permit—must first appeal to the Commission and only afterwards may seek judicial review of the Commission's order disposing of that appeal.[2]

This Court did not hold to the contrary in *Texas Air Control Board*. The Board (the predecessor agency to the Commission) had delegated its authority to issue air quality permits under certain statutes to the executive director. 502 S.W.2d at 214. The case arose when the Dahlstrom Corporation sought a permit to construct a rock crusher. *Id.* at 214. Travis County appeared at a public hearing to contest the application. *Id.* Dahlstrom's request to modify a permit condition was denied, and it appealed to the Board. *Id.* Travis County sued to prevent the Board from modifying the permit. *Id.* at 215. The Board argued that Travis County failed to exhaust its administrative remedies because it could have appealed to the Board. *Id.*; *see Lueck v. State*, 325 S.W.3d 752, 762 (Tex. App.—Austin 2010, pet. denied) (discussing

---

[2] Although the Commission does not dispute that the Executive Director's decision on an application for an enhanced standard permit is appealable to the Commission, it concedes that it rules are "ambiguous" regarding whether an applicant can use the motion-to-overturn process. The Commission has adopted rules providing that the motion-to-overturn process applies to the Executive Director's decisions on an application for "air quality permits under Chapter 116 of this title." 30 Tex. Admin. Code § 50.131(b)(1) (2023) (Tex. Comm'n on Envtl Quality, Purpose and Applicability). The same rule, however, exempts decisions on applications for "air quality standard permits under Chapter 116." *Id.* § 50.131(c)(1). The Commission insists that TXI could have prosecuted its appeal in another fashion but declines to indicate the appropriate procedural vehicle. TXI contends that a motion to overturn is the "only mechanism to have an act of the [Executive Director] reviewed by the Commissioners." Regardless of who is correct, it remains TXI's burden to rebut the presumption that the Commission's order is valid. *See Texas Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 547 (Tex. 2022). As we explain in our discussion of TXI's second issue, we must affirm even if the Commission in fact allowed the motion to overturn to be overruled because the commissioners concluded that the motion-to-overturn procedure was inapplicable.

doctrine "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"). Travis County responded that the TCAA explicitly authorized an appeal to district court before completing the internal appeals process. Section 6.01 provided that a "person affected by any ruling, order, decision, or other act of the board may appeal by filing a petition in a district court of Travis County," and the Board had delegated its authority to the Executive Director. *Texas Air Control Bd.*, 502 S.W.2d at 215. This Court acknowledged that the language of Section 6.01 "might permit an appeal to district court from any and every order of the Executive Director" but held the legislature was presumed to know of the exhaustion requirement when enacting the TCAA and intended it to apply. *Id.* at 216–17.

The Commission argues that this analysis demonstrates that the decision subject to judicial review is that of the Executive Director; the appeal to the Board is merely an administrative remedy that must be exhausted. It urges us to apply the same reasoning here because the "grant of judicial review for Board acts in former Section 6.01(a) was nearly identical to the current Section 382.032(a)." *See Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012) ("[O]nce appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."). The Commission, however, ignores that we ordered the dismissal of Travis County's suit so that the County could file an appeal with the Board and that the dismissal was "without prejudice to the County's right to appeal the order of the Texas Air Control Board in that matter, if aggrieved, to the district court of Travis County." *Texas Air Control Bd.*, 502 S.W.2d at 217. In other words, if Travis County filed an appeal with the Air

9

Control Board and it was rejected, it would be the Board's order rejecting the appeal that would be subject to judicial review. *See id.*

Moreover, current Section 382.032 and former Section 6.01 differ in an important respect. While Section 6.01 made no distinction between decisions of the Air Control Board itself and those of the Executive Director, *see id.* at 216 n.4, Section 382.032 states that a person may appeal a decision of the Executive Director only "if an appeal to the commission is not provided." *See* Tex. Health & Safety Code § 382.032(a). Even if *Texas Air Control Bd.*'s interpretation of Section 6.01 supported the Commission's argument, we must give effect to the plain language of Section 382.032 as it exists today. *See Traxler*, 376 S.W.3d at 749 n.33 (declining to apply presumption that legislature adopted previous interpretation "when it would contradict the statute's plain words").

The Commission argues in the alternative that if we conclude "that Section 382.032(a) of the TCAA does not provide judicial review of the ED's decision, TXI has the right to judicial review under Section 5.351" of the Water Code. Under that statute, "A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or suspend the act of the commission." The Commission argues that Section 5.351 "has been used as the vehicle for judicial review in a variety of statutory programs administered by the [Executive Director] that lack a dedicated judicial-review statute" and invites us to apply it here. The standard permitting program, however, has a dedicated judicial review statute—Section 382.032—and it specifically authorizes appeals of Commission decisions under the TCAA such as the one at issue here. We conclude that the TCAA's judicial review provision controls over the more general Section 5.351. *See AC Ints., L.P. v. Texas Comm'n on Env't Quality*, 543 S.W.3d 703, 707 (Tex. 2018) (agreeing with court of appeals that

10

Section 382.032 controlled over Section 5.351 "because the Clean Air Act not only authorizes the particular TCEQ decision but also specifically provides for its judicial review," Section 382.032 "controls over the more general Water Code provision"); *see also Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 98 (Tex. 2017) ("When statutes irreconcilably conflict, traditional rules of statutory construction dictate that the later enacted and more specific legislation should control.").

Nevertheless, the Commission contends that we held that decisions on motions to overturn are not final decisions subject to judicial review. *See City of Austin v. Texas Comm'n on Env't Quality*, 303 S.W.3d 379, 380 (Tex. App.—Austin 2009, no pet.). In that case, KBDJ, LP planned to construct a limestone quarry within the recharge zone of the Edwards Aquifer. *Id.* at 381. KBDJ applied to the Commission for approval of its water-pollution abatement plan. *Id.* The Executive Director granted the petition, and the City filed a motion to overturn, which was denied. *Id.* A district court affirmed the Commission, and the City appealed under Section 5.351 of the Water Code. The Commission argued that we lacked jurisdiction because the City's suit was untimely. *Id.* at 381–82. At the time, Section 5.351(b) provided that a person affected by "a ruling, order, or decision of the commission" must file a suit for judicial review within thirty days of the effective date of the ruling, order, or decision. *Id.* at 382 (citing Act of Apr. 28, 1977, 65th Leg., R.S., ch. 870, § 1, 1977 Tex. Gen. Laws 2207, 2214 (current version at Tex. Water Code § 5.351)). The City argued that it complied with this requirement because it filed suit within thirty days of the Commission's denial of its motion to overturn. *Id.* at 384.

To resolve the dispute, we looked to the rule that "administrative orders are generally final and appealable if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Id.* (citing *Texas-New Mexico*

11

*Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991)). We explained that the Commission's denial of the motion to overturn did "not establish any rights or obligations" but was "merely a refusal to overturn or otherwise modify the decision that did establish KBDJ's rights and obligations." *Id.* at 385. It was "conditions set forth in the executive director's decision that the Commission will enforce and with which the Commission will expect KBDJ to comply." *Id.*

The Commission argues that *City of Austin* stands for the proposition that "denial of a motion to overturn is not a final, appealable decision subject to judicial review" and restricts us to reviewing the ED's decision. *City of Austin*, however, was an interpretation of the scope of judicial review afforded by Section 5.351 of the Water Code. *See Texas Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 894 (Tex. App.—Austin 2014, no pet.) ("[T[his Court has recognized that judicial review under section 5.351 is limited to the review of 'final agency orders.'" (citing *City of Austin*, 303 S.W.3d at 385)). Section 382.032 controls here, and, unlike Section 5.351, specifies the circumstances in which a decision of the Executive Director is appealable.[3] *See* Tex. Health & Safety Code. § 382.032(a). Although grants of jurisdiction "must be considered in the context of the long-established principle that only final orders of an agency are subject to judicial review," *Texas Comm'n on Env't Quality v. Sierra Club*, No. 03-12-00625-CV, 2014 WL 902513, at *3 (Tex. App.—Austin Mar. 7, 2014, no pet.) (mem. op.), that principle does not empower courts to ignore the statutory text, *see Texas-New Mexico*

---

[3] *City of Austin* is distinguishable on another basis. At the time, Section 5.351 did not address the appealability of decisions of the executive director. *See* Act of April 28, 1977, 65th Leg., R.S., ch. 870, § 1, 1977 Tex. Gen. Laws 2207, 2214 (current version at Tex. Water Code § 5.351). The legislature subsequently amended the statute to allow a person affected by a "ruling, order, or decision on a matter delegated to the executive director" to file a petition for review of that "ruling, order, or decision" subject to certain requirements. *See* Tex. Water Code § 5.351(c).

*Power Co.*, 806 S.W.2d at 232 (recognizing that "there is no single rule dispositive of all questions of finality"). Even if an Executive Director's decision on a permit application would meet the general test for finality in *Texas-New Mexico Power Co.*, Section 382.032 establishes that it is the Commission's resolution of an appeal of that decision that is the final and appealable order. *See* Tex. Health & Safety Code. § 382.032(a)*.*

In sum, we conclude that the Commission's decision on TXI's motion to overturn is the final and appealable order.

*Does Substantial Evidence Support the Commission's Order?*

We turn next to whether the Commission's denial of TXI's motion to overturn is supported by substantial evidence in the record. *See* Tex. Gov't Code § 2001.174(2)(E). This review is "highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *North E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020). Substantial evidence in this sense "does not mean a large or considerable amount of evidence" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Slay v. Texas Comm'n on Env't. Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). The evidence may even "preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Riou*, 598 S.W.3d at 251 (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)).

Before we can perform this review, however, we must resolve a dispute over the meaning of "residence." *See* Tex. Health & Safety Code § 382.05198(a)(19) (requiring 440-yard setoff "from any building used as a single or multifamily residence"). The TCAA does not

define the term. TXI argues that the outbuilding where Nopp's parents live does not qualify as a residence because it is not sufficiently permanent. The Commission responds that the ordinary meaning of "residence" is a dwelling—not necessarily a permanent one—and that the record supports its determination that the outbuilding is a residence.

To determine the plain meaning of an undefined statutory term, "we typically look first to [its] dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 702 (Tex. 2020) (citing *Texas State Bd. of Exam'rs of Marriage & Fam. Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)). With respect to individuals, "residence" means "[t]he place where one actually lives, as distinguished from a domicile." *Residence*, Black's Law Dictionary (11th ed. 2019); *see Residence*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/residence (last visited April 4, 2023) ("the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn"). Both definitions define the term in contrast to "domicile," which generally means "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." *Domicile*, Black's Law Dictionary (11th ed. 2019).

TXI argues that the supreme court has defined a residence as (1) a "fixed place of abode within the possession of the [person]," (2) that is "occupied or intended to be occupied consistently over a substantial period of time," and (3) that "is permanent rather than temporary." *See Snyder v. Pitts*, 241 S.W.2d 136, 140 (Tex. 1951). TXI asserts that *Snyder* laid out a generally applicable test for what constitutes a residence, but that case arose in a specific statutory context. At the time, a venue statute provided that a resident of this state "shall be sued in the 'county in which he has his domicile.'" *Id.* at 138 (citing Act of May 11, 1935,

14

44th Leg., R.S., ch. 213, §1, 1935 Tex. Gen. Laws 503, 504).  The supreme court had previously held that "domicile," as used in that statute, "did not mean domicile but rather meant residence." *Id.*  The question in *Snyder* was how to determine a "second residence away from a domicile." *Id.* at 140.  TXI argues that *Snyder* announced the "test for a residence that is not a permanent residence or a domicile," but the test is a construction of the term "domicile" as it is used in a particular statute.[4]  *See id.* at 138–40.  Section 382.05198 applies to "any building used as a single or multifamily residence," and we must presume the legislature intended to employ that term rather than "domicile."  *See Wichita County*, 548 S.W.3d at 492.  We will apply the common meaning of a residence as a place "where one actually lives," as distinguished from a domicile or place of temporary sojourn.  *See Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999) ("generally accepted" meaning of "residence" is "the [p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; . . . a dwelling house").  This definition is consistent with the purpose of the TCAA in providing enhanced protections to the communities surrounding concrete batch plants that operate under the enhanced standard permit.  *See generally* Tex. Health & Safety Code § 382.05198(a) (enumerating nineteen requirements not included in regular standard permit).

We now determine whether the Commission's decision is reasonably supported by the record.  TXI initially challenges whether the Nopp Affidavit is sufficient on its face to establish that the outbuilding is used as a residence.  More specifically, TXI argues that Nopp

---

[4] TXI cites only one case applying this three-part test in a different statutory context. *See In re Kelso*, 266 S.W.3d 586, 590 (Tex. App.—Fort Worth 2008, orig. proceeding).  In *Kelso*, the Fort Worth Court of Appeals employed the three-part test to determine a child's "principal residence" for the purposes of determining standing to bring suit under the Family Code. *See id*. (citing Tex. Fam. Code § 102.003(b)(3) (directing court to "consider the child's principal residence during the relevant time preceding the date of commencement of the suit"))).  *Kelso* does not persuade us that *Snyder* announced a generalized test for determining a residence.

15

failed to provide "specific facts regarding how often [his] parents resided in the metal outbuilding versus spent time in their motorhome," and whether his "parents or his business (which he admits uses it) possess the metal outbuilding." Evidence of exactly how much time his parents spent there is not necessarily determinative. The supreme court has observed in other contexts that whether a place is a residence "depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides[.]" *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964). Nopp's affidavit states that his parents reside in the outbuilding and sleep there when not traveling in their motorhome and list the property as their address on their driver's licenses, voter registration cards, and medical records. Even though they "travel often in their motorcoach," the affidavit alleges facts showing their intent to make the outbuilding their residence.

The evidence TXI attached to its motion to overturn does not negate the affidavit as a matter of law. In support of its motion, TXI attached a 2012 application for a septic system permit signed by Nopp and a Commission-required certification of the septic system. Nopp wrote on the application that the system was for a "detached garage" and wrote "N/A" in the blank under "bedrooms." Attached to the application is an engineering report with a sketch of the outbuilding that bears the notation "ET sized to handle a detached garage with a toilet and a shower in a corner bathroom." The septic system certification, also signed by Nopp, confirms "that the wastewater disposal limit of the metal outbuilding septic system is 30 gallons per day." TXI argues that this is significant because, under Commission rules, the absolute smallest wastewater limit for a single-family residence is 180 gallons per days. *See* 30 Tex. Admin. Code § 285.91(3) (Tex. Comm'n on Env't Quality, On-Site Sewage Facilities). Finally, TXI attached

16

images of the outbuilding that, in TXI's view, give no indication that it is a residence.[5] But these materials do not negate the factual assertions in the affidavit that, at the time TXI filed its application in 2019, Nopp's parents "actually lived" in the outbuilding. The certification reflects that the septic system did not meet Commission standards for a residence, not whether Nopp's parents actually used the building as a residence. The application shows, at most, that the outbuilding was not used as a residence in 2012. We conclude that the Commission could have reasonably concluded that the affidavit showed there was a residence within the setback zone.

We overrule TXI's first issue.

## DUE PROCESS

TXI argues in its second issue that the Commission's decision as arbitrary and capricious. *See* Tex. Gov't Code § 2001.174(2)(F) (authorizing reversal if agency's action was "arbitrary or capricious"). "An agency's decision is arbitrary when its final order denies parties due process of law." *Oncor Elec. Delivery Co. LLC v. Public Util. Comm'n*, 406 S.W.3d 253, 265 (Tex. App.—Austin 2013, no pet.) (citing *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 16 (Tex. 1977)).

The Texas Constitution protects against the deprivation of "life, liberty, [or] property . . . except by the due course of the law of the land." Tex. Const. art. I, § 19. Because of the textual similarity with the federal constitution's Due Process clause, the supreme court has "traditionally followed contemporary federal due process interpretations of procedural due process issues." *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018). A two-part test governs a procedural due process claim: a court must determine whether the

---

[5] The photos were taken by an employee of TXI following the Executive Director's decision.

17

petitioner possesses "a liberty or property interest that is entitled to procedural due process protection" and, if so, "what process is due." *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019).

The parties join issue over the second part. Due process generally "requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Matzen v. McLane*, 659 S.W.3d 381 (Tex. 2021). TXI argues that the Commission failed to provide TXI with a meaningful appeal of the Executive Director's decision. More specifically, TXI contends that it "has no assurance" that its motion to overturn was "meaningfully heard" because the Executive Director and the Office of Public Interest Counsel argued that the Commission's "procedural rules do not allow the Commissioners to consider a motion to overturn a standard permit decision." TXI contends that due process is "illusory if the person affected by the decision has no assurance that their attempts to be heard were, in fact, 'meaningfully heard' by the decisionmaker." The Commission responds that TXI waived this complaint and, in the alternative, that TXI was not denied due process.

Assuming without deciding that TXI preserved this complaint, it has not shown a violation of due process. In administrative hearings, due process requires, at a minimum, "that parties be accorded a full and fair hearing on disputed fact issues." *City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 262 (Tex. 2001). TXI argues that the record must show that the Commission considered and rejected its motion to overturn on the merits rather than because it agreed that the motion to overturn was inapplicable. However, TXI has not cited any statute or principle of due process requiring the Commission to explain the legal theories behind its decision. *Cf.* Tex. Gov't Code § 2001.141(b) ("A decision or order of a state agency that may become final under Section 2001.144 that is adverse to any party in a contested case

18

must be in writing and signed by a person authorized by the agency to sign the agency decision or order."). Moreover, even if the Commission in fact concluded that motion-to-overturn procedure did not apply, a reviewing court would nevertheless affirm if the record before the Commission supported the Executive Director's decision to deny the permit. *See Westlake Ethylene Pipeline Corp. v. Railroad Comm'n of Tex.*, 506 S.W.3d 676, 682 (Tex. App.—Austin 2016, pet. denied) ("[A] reviewing court must generally affirm an administrative order if it is correct on any theory of law applicable to the case regardless of whether the agency purported to rely on that legal theory or even relied on an erroneous one." (citing *Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 25 (Tex. App.—Austin 2013, no pet.))).

We overrule TXI's second issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: April 7, 2023

19